USCA1 Opinion

 

 October 6, 1992 _________________________ No. 92-1437 STEVEN WYNNE, Plaintiff, Appellant, v. TUFTS UNIVERSITY SCHOOL OF MEDICINE, Defendant, Appellee. _________________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Rya W. Zobel, U.S. District Judge] ___________________ _________________________ Before Breyer, Chief Judge, ___________ Torruella and Selya, Circuit Judges. ______________ _________________________ Robert LeRoux Hernandez, with whom Ellis & Ellis was on ________________________ ______________ brief, for appellant. Alan D. Rose, with whom Nutter, McClennen & Fish was on _____________ _________________________ brief, for appellee. _________________________ _________________________ SELYA, Circuit Judge. This appeal requires us to SELYA, Circuit Judge. ______________ revisit a longstanding dispute between Tufts University School of Medicine and Steven Wynne, a former student. On a previous occasion, we vacated the district court's entry of summary judgment in Tufts' favor. See Wynne v. Tufts Univ. School of ___ _____ ______________________ Medicine, 932 F.2d 19 (1st Cir. 1991) (en banc). After further ________ proceedings, the district court again entered summary judgment for the defendant. This time around, on an augmented record, we affirm. Background Background __________ The facts pertinent to Wynne's banishment from the groves of academe are chronicled in our earlier opinion and need not be fully rehearsed. A succinct summary suffices. Wynne matriculated at Tufts in 1983. He failed eight of fifteen first-year courses. Although academic guidelines provided for dismissal after five course failures, the dean granted Wynne a special dispensation and allowed him to repeat the first year of medical school. Over the summer of 1984, Wynne underwent neuropsychological testing at Tufts' instance and expense. The results, described in detail in our earlier opinion, id. at 21, showed cognitive deficits and weaknesses in ___ processing discrete units of information. However, no differential diagnosis of dyslexia or any other particularized learning disability was made at this time. During Wynne's second tour of the first-year 2 curriculum, Tufts arranged to supply him with tutors, counsellors, note-takers, and other aids. This time, he passed all but two courses: pharmacology and biochemistry. Tufts still did not expel Wynne. Instead, it permitted him to take make-up examinations in these two subjects. He passed pharmacology but failed biochemistry. That ended the matter. Wynne was dismissed in September, 1985. Prior Proceedings Prior Proceedings _________________ In his court case, Wynne alleged that he was learning- disabled and that Tufts had discriminated against him on the basis of his handicap. In short order, Wynne refined his claim to allege that his disability placed him at an unfair disadvantage in taking written multiple-choice examinations and that Tufts, for no good reason, had stubbornly refused to test his proficiency in biochemistry by some other means. Eventually, the district court granted summary judgment in Tufts' favor on the ground that Wynne, because of his inability to pass biochemistry, was not an "otherwise qualified" handicapped person within the meaning of section 504 of the Rehabilitation Act of 1973, 29 U.S.C. 794 (1988), as explicated by the relevant caselaw. On appeal, a panel of this court reversed. That opinion was withdrawn, however, and the full court reheard Wynne's appeal. We concluded that, in determining whether an aspiring medical student meets section 504's "otherwise qualified" prong, it is necessary to take into account the extent 3 to which reasonable accommodations that will satisfy the legitimate interests of both the school and the student are (or are not) available and, if such accommodations exist, the extent to which the institution explored those alternatives. See Wynne, ___ _____ 932 F.2d at 24-26 (citing, inter alia, School Bd. of Nassau _____ ____ _____________________ County v. Arline, 480 U.S. 273 (1987)). Recognizing the unique ______ ______ considerations that come into play when the parties to a Rehabilitation Act case are a student and an academic institution, particularly a medical school training apprentice physicians, we formulated a test for determining whether the academic institution adequately explored the availability of reasonable accommodations: If the institution submits undisputed facts demonstrating that the relevant officials within the institution considered alternative means, their feasibility, cost and effect on the academic program, and came to a rationally justifiable conclusion that the available alternatives would result either in lowering academic standards or requiring substantial program alteration, the court could rule as a matter of law that the institution had met its duty of seeking reasonable accommodation. In most cases, we believe that, as in the qualified immunity context, the issue of whether the facts alleged by a university support its claim that it has met its duty of reasonable accommodation will be a purely legal one. Only if essential facts were genuinely disputed or if there were significantly probative evidence of bad faith or pretext would further fact finding be necessary. Id. at 26 (citation and internal quotation marks omitted). ___ Because the summary judgment record did not satisfactorily 4 address this issue,1 we vacated the judgment and remanded for further proceedings, leaving the district court "free to consider other submissions [and] to enter summary judgment thereon if [an expanded record] meet[s] the standard we have set forth." Id. at ___ 28. Following remand, Tufts filed a renewed motion for summary judgment accompanied by six new affidavits. The plaintiff filed a comprehensive opposition supported, inter alia, _____ ____ by his own supplemental affidavit. The court below read the briefs, heard oral argument, reviewed the parties' updated submissions, and determined that Tufts had met its burden under Wynne. In the lower court's view, the expanded record clearly _____ showed that Tufts had evaluated the available alternatives to its current testing format and had reasonably concluded that it was not practicable in this instance to depart from the standard multiple-choice format. Accordingly, the court again entered summary judgment in Tufts' favor. This appeal ensued. Issues Issues ______ The principal issue on appeal is whether, given those ____________________ 1Tufts had filed only a single affidavit touching upon this issue. Scrutiny of that affidavit, signed by the dean, revealed the following shortcomings: "There is no mention [in the dean's affidavit] of any consideration of possible alternatives, nor reference to any discussion of the unique qualities of multiple choice examinations. There is no indication of who took part in the decision [not to deviate from multiple choice examinations] or when it was made." Wynne, 932 F.2d at 28. Because we thought _____ that a party seeking summary judgment should proffer more than "the simple conclusory averment of the head of an institution," we declined to accept the dean's affidavit as a sufficient basis for shortstopping the litigation. Id. ___ 5 facts not genuinely in dispute, Tufts can be said, as a matter of law, either to have provided reasonable accommodations for plaintiff's handicapping condition2 or to have demonstrated that it reached a rationally justifiable conclusion that accommodating plaintiff would lower academic standards or otherwise unduly affect its program. There is also a secondary issue: whether plaintiff has advanced significantly probative evidence sufficient to ground a finding that Tufts' reasons for not making further accommodations were pretextual or asserted in bad faith. Standard of Review Standard of Review __________________ Summary judgment has a special place in civil litigation. The device "has proven its usefulness as a means of avoiding full-dress trials in unwinnable cases, thereby freeing courts to utilize scarce judicial resources in more beneficial ways." Mesnick v. General Elec. Co., 950 F.2d 816, 822 (1st Cir. _______ _________________ 1991), cert. denied, 112 S. Ct. 2965 (1992). In operation, _____ ______ summary judgment's role is to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required. See id.; see also Garside v. ___ ___ ___ ____ _______ Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990). Since ________________ appellate review of an order granting summary judgment is ____________________ 2There is a lingering question as to whether Wynne's disability is such that he should be deemed "an individual with handicaps" within the purview of 29 U.S.C. 794. Since the court below resolved the case against Wynne on summary judgment, we must take the facts and the reasonable inferences from them in the light most congenial to his cause. Thus, we assume, as the district court apparently assumed sub silentio, that Wynne ___ ________ suffers from a recognizable handicap. 6 plenary, the court of appeals, like the trial court, "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Griggs-Ryan v. Smith, 904 F.2d 112, 115 ___________ _____ (1st Cir. 1990). We uphold a grant of summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When, as here, the movant-defendant has suggested that competent evidence to prove the case is lacking, the burden devolves upon the nonmovant-plaintiff to "document some factual disagreement sufficient to deflect brevis ______ disposition." Mesnick, 950 F.2d at 822. _______ This burden is discharged only if the cited disagreement relates to a genuine issue of material fact. See ___ Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). ________ ____________________ "In this context, 'genuine' means that the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party [and] 'material' means that the fact is one that might affect the outcome of the suit under the governing law." United States v. One Parcel of Real Property, _____________ ______________________________ Etc. (Great Harbor Neck, New Shoreham, R.I.), 960 F.2d 200, 204 ____________________________________________ (1st Cir. 1992) (citing Anderson, 477 U.S. at 248; internal ________ quotation marks omitted). This requirement has sharp teeth: the 7 plaintiff "must present definite, competent evidence to rebut the motion." Mesnick, 950 F.2d at 822. Such evidence "cannot be _______ conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve at an ensuing trial." Mack v. Great Atl. & Pac. Tea ____ _____________________ Co., 871 F.2d 179, 181 (1st Cir. 1989). As the Court has ___ cautioned, evidence that "is merely colorable or is not significantly probative" cannot deter summary judgment. Anderson, 477 U.S. at 249-50 (citations omitted). ________ Discussion Discussion __________ We have carefully reviewed the amplitudinous record and are fully satisfied that the district court did not err in granting summary judgment. Fairly read, the record presents no genuine issue as to any material fact. Because this case has consumed so many hours of judicial time, we resist the temptation to wax longiloquent. Instead, we add only a few decurtate observations embellishing what the en banc court previously wrote and remarking the significance of the new materials adduced below. First: Following remand, Tufts satisfactorily filled First: the gaps that wrecked its initial effort at summary judgment. The expanded record contains undisputed facts demonstrating, in considerable detail, that Tufts' hierarchy "considered alternative means" and "came to a rationally justifiable conclusion" regarding the adverse effects of such putative accommodations. Wynne, 932 F.2d at 26. Tufts not only _____ 8 documented the importance of biochemistry in a medical school curriculum, but explained why, in the departmental chair's words, "the multiple choice format provides the fairest way to test the students' mastery of the subject matter of biochemistry." Tufts likewise explained what thought it had given to different methods of testing proficiency in biochemistry and why it eschewed alternatives to multiple-choice testing, particularly with respect to make-up examinations. In so doing, Tufts elaborated upon the unique qualities of multiple-choice examinations as they apply to biochemistry and offered an exposition of the historical record to show the background against which such tests were administered to Wynne. In short, Tufts demythologized the institutional thought processes leading to its determination that it could not deviate from its wonted format to accommodate Wynne's professed disability. It concluded that to do so would require substantial program alterations, result in lowering academic standards, and devalue Tufts' end product highly trained physicians carrying the prized credential of a Tufts degree. To be sure, Tufts' explanations, though plausible, are not necessarily ironclad. For instance, Wynne has offered evidence that at least one other medical school and a national testing service occasionally allow oral renderings of multiple- choice examinations in respect to dyslexic students. But, the point is not whether a medical school is "right" or "wrong" in making program-related decisions. Such absolutes rarely apply in 9 the context of subjective decisionmaking, particularly in a scholastic setting. The point is that Tufts, after undertaking a diligent assessment of the available options, felt itself obliged to make "a professional, academic judgment that [a] reasonable accommodation [was] simply not available." Wynne, 932 F.2d at _____ 27-28. Phrased another way, Tufts decided, rationally if not inevitably, that no further accommodation could be made without imposing an undue (and injurious) hardship on the academic program. With the diligence of its assessment and the justification for its judgment clearly shown in the augmented record, and with the fact of the judgment uncontroverted, the deficiency that spoiled Tufts' original effort at brevis ______ disposition has been cured. Second: The undisputed facts show that Tufts neither Second: ignored Wynne nor turned a deaf ear to his plight. To the contrary, the defendant (a) warned Wynne in 1983 that he was failing biochemistry and suggested he defer his examination (a suggestion that Wynne scotched); (b) arranged for a complete battery of neuropsychological tests after Wynne failed eight courses in his freshman year; (c) waived the rules and permitted Wynne to repeat the first-year curriculum; (d) furnished Wynne access to tutoring, taped lectures, and the like; (e) allowed him to take untimed examinations; and (f) gave him make-up examinations in pharmacology and biochemistry after he again failed both courses. Given the other circumstances extant in this case, we do not think that a reasonable factfinder could 10 conclude that Tufts, having volunteered such an array of remedial measures, was guilty of failing to make a reasonable accommodation merely because it did not also offer Wynne, ____ unsolicited, an oral rendering of the biochemistry examination. Third: Reasonableness is not a constant. To the Third: contrary, what is reasonable in a particular situation may not be reasonable in a different situation even if the situational differences are relatively slight. Cf., e.g., United States v. ___ ____ ______________ Rodriguez-Morales, 929 F.2d 780, 785 (1st Cir. 1991) (concluding _________________ that "reasonableness has a protean quality"), cert. denied, 112 _____ ______ S. Ct. 868 (1992); Sierra Club v. Secretary of the Army, 820 F.2d ___________ _____________________ 513, 517 (1st Cir. 1987) (paraphrasing Emerson and observing that "reasonableness 'is a mutable cloud, which is always and never the same.'"). Ultimately, what is reasonable depends on a variable mix of factors. In the section 504 milieu, an academic institution can be expected to respond only to what it knows (or is chargeable with knowing). This means, as the Third Circuit has recently observed, that for a medical school "to be liable under the Rehabilitation Act, [it] must know or be reasonably expected to know of [a student's] handicap." Nathanson v. Medical College of _________ __________________ Pa., 926 F.2d 1368, 1381 (3d Cir. 1991). A relevant aspect of ___ this inquiry is whether the student ever put the medical school on notice of his handicap by making "a sufficiently direct and specific request for special accommodations." Id. at 1386. ___ Thus, we must view the reasonableness of Tufts' accommodations 11 against the backdrop of what Tufts knew about Wynne's needs while he was enrolled there. Several factors are entitled to weight in this equation, including the following: (a) Wynne was never diagnosed as dyslexic while enrolled at Tufts; (b) the school gave him a number of special dispensations and "second chances" including virtually every accommodation that he seasonably suggested; (c) Wynne had taken, and passed, multiple-choice examinations in several courses; and (d) he never requested, at any time prior to taking and failing the third biochemistry exam, that an oral rendering be substituted for the standard version of the multiple-choice test.3 Under these circumstances, we do not believe a rational factfinder could conclude that Tufts' efforts at accommodation fell short of the reasonableness standard. Fourth: Wynne's allegations of pretext do not raise Fourth: prohibitory doubts about the reasonableness of Tufts' attempted accommodations or about the honesty of its assessment of alternatives to multiple-choice examinations vis-a-vis the school's educational plan. When pretext is at issue in a discrimination case, it is a plaintiff's duty to produce specific facts which, reasonably viewed, tend logically to undercut the ____________________ 3In his appellate brief, Wynne excoriates Tufts for its failure to provide him "with the one simple accommodation he has asked for and believes would make a difference: that the multiple choice examination in biochemistry be administered to him orally on an untimed basis with the assistance of a trained reader." Wynne neglects to mention, however, that he never sought this type of accommodation until after Tufts sent him packing and adversary proceedings were underway. 12 defendant's position. See, e.g., Villanueva v. Wellesley ___ ____ __________ _________ College, 930 F.2d 124, 127 (1st Cir.), cert. denied, 112 St. Ct. _______ _____ ______ 181 (1991); Mack, 871 F.2d at 181. The plaintiff may neither ____ "rest[] merely upon conclusory allegations, improbable inferences, and unsupported speculation," Medina-Munoz v. R.J. ____________ ____ Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990), nor _____________________ measurably bolster his cause by hurling rancorous epithets and espousing tenuous insinuations. See Mesnick, 950 F.2d at 826; ___ _______ Yerardi's Moody St. Restaurant & Lounge, Inc. v. Board of __________________________________________________ _________ Selectmen, 932 F.2d 89, 92 (1st Cir. 1991). _________ Here, Wynne's charges comprise more cry than wool. They consist of unsubstantiated conclusions, backed only by a few uncoordinated evidentiary fragments. More is required to forestall summary judgment. See Wynne, 932 F.2d at 26. ___ _____ Conclusion Conclusion __________ We need go no further. In our earlier opinion, we recognized the existence of a statutory obligation on the part of an academic institution such as Tufts to consider available ways of accommodating a handicapped student and, when seeking summary judgment, to produce a factual record documenting its scrupulous attention to this obligation. Id. at 25-26. Of course, the ___ effort requires more than lip service; it must be sincerely conceived and conscientiously implemented. We think that Tufts, the second time around, has cleared the hurdle that we envisioned: the undisputed facts contained in the expanded 13 record, when considered in the deferential light that academic decisionmaking deserves, id. at 25, meet the required standard. ___ We add a final note of caution. Although both parties to this litigation invite us to paint with a broad brush, we decline their joint invitation. The issue before us is not whether a medical student, authoritatively diagnosed as a dyslexic and known to the school to be so afflicted, is ever entitled, upon timely request, to an opportunity to take an examination orally. Rather, we are limited to the idiosyncratic facts of Wynne's case. The resulting record presents a narrower, easier issue and we believe that the district court resolved that issue correctly. Affirmed. Affirmed. ________ 14