Gill v. Franklin Pierce Law Ctr      CV-93-241-SD  05/17/95 P

UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEW HAMPSHIRE


Robert D. Gill


     v.                                    Civil No. 93-241-SD


Franklin Pierce Law Center;
Robert M. Viles, in his capacity
 as President and Dean of
 Franklin Pierce Law Center


O R D E R


     In this civil action, plaintiff Robert D. Gill asserts that
Franklin Pierce Law Center (FPLC)[1] violated his rights under
section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794,
by dismissing him as a student and then by denying his
application for readmission.  Gill also asserts state-law claims
for breach of contract and defamation.

     Presently before the court is defendants' motion for summary
judgment, which was filed on February 22, 1995.  Plaintiff's
response to said motion was due on March 14, 1995.  However, as
of the date of this order, no such response has been filed.

     [1]In his complaint, plaintiff names as defendants both FPLC
and Robert M. Viles in his capacity as President and Dean of
FPLC.  For the purposes of this order, the court refers to both
defendants collectively as "FPLC".

## Background

Plaintiff Gill applied for admission to FPLC in April of 1987. His application included a written personal statement in which he alleges that he stated "he suffered from Post Traumatic Stress Syndrome common to children growing up in an Alcoholic home." Amended Complaint ¶ 6.

Gill was admitted to FPLC in the fall of 1987 and completed his first two and one-half years of FPLC's Juris Doctor program in good academic standing. However, on February 10, 1990, during his sixth semester at FPLC, plaintiff was notified by the Academic Standing Committee (ASC) that he was ineligible to continue his studies because he was in violation of Part VI, Rule 1(a)(3) of FPLC's Academic Rules and Regulations.

Rule 1(a)(3) of Part VI provides,

> 1. ACADEMIC ELIGIBILITY TO CONTINUE AS A DEGREE CANDIDATE
>    (a) A student who at the end of any semester:
>    . . . .
>       (3) Has earned nine (9) credits below C-, . . .
>    is not eligible to continue as a candidate for the Juris Doctor degree, except under such terms as may be established by the Committee on Academic Standing. Failure to meet the terms established by the Committee shall make a student ineligible for the Juris Doctor degree.

FPLC Academic and Rules and Regulations (the Rules), Compiled as of July 1988 (attached to Affidavit of Linda Hupp as Exhibit D).

The notice plaintiff received on February 10 also advised him to submit a plan to the ASC in accordance with Part VI, Rule 6, which provides, in relevant part, "The student must present a plan for overcoming deficiencies to the Committee before the deadline set by the Committee.  The student may, at the time designated, request a hearing before the Committee."

Plaintiff met with the ASC and submitted his plan to overcome academic deficiencies on February 28, 1990.  Pursuant to Part VI, Rule 7, the ASC was thereafter required to review Gill's case "to determine the probability of rehabilitation."  Rule 7 further provides that this

> determination shall rest on two basis [sic]: an assessment of the student's abilities and an assessment of the feasibility of the student's plan.  The assessment of the student's abilities will take into account such factors as the Committee on Academic Standing finds relevant including the student's undergraduate and graduate school grades, law school grades, LSAT score, law school faculty reports of course or other academic performance, and internship supervisor's evaluations.  The assessment of plan feasibility will take into account the extent to which the plan addresses the causes of the deficiency, the demands imposed by the plan in comparison with the student's past performance and abilities, and the student's demonstration of attitude, effectiveness, self-reliance, and motivation.

As a result of the February 28 meeting with Gill, ASC member Professor Friedman wrote to Gill on March 7 and asked him to

3

answer three questions regarding actions he had taken or had failed to take relative to his course of study at FPLC. Friedman requested a response from Gill by March 13, 1990.

On March 21, 1990, the ASC stated in a letter to Gill, "Since we did not hear from you by the return day [of March 13, 1990], we decided to wait a few more days. As of today, we have given you an extension of eight (8) days and have heard nothing." Letter from the ASC to Gill dated Mar. 21, 1990, at 1 (Attachment A to Plaintiff's Amended Complaint). The ASC letter goes on to state,

> Actions may not speak louder than words, but actions are all we have. Your actions of this semester and last tell us that you are not choosing to take the steps necessary to reestablish your eligibility to continue. Last semester you ignored some of the most basic academic rules such as the drop/add date rule, having enough credits to graduate, taking classes you signed up for, etc. Then you generally refused to avail yourself of any of the processes that were offered to you through Registrar Wheeler, to set your academic record in order. This semester did not turn a new leaf, but continued the pattern of last semester.
> We can only conclude that you are content with the situation as it is, or that, in any event, you choose not to take the necessary steps to alter it.
> We hereby dismiss you under Rule VI.8(c)(1) and (4) on the grounds:
> 1. Your plan of February 27 does not adequately address the cause of the deficiency, and
> 2. You lack the abilities to complete the degree program.

4

_Id._ Said letter further informed plaintiff of his right to seek review of the ASC's decision through an appeal to the faculty under Part XII of the Rules. _Id._ at 2.

Plaintiff appealed the ASC's decision to the faculty, which held a hearing on the matter on May 1, 1990. The faculty subsequently issued an opinion affirming the ASC's decision to dismiss Gill and denying his appeal. Appeal of Robert D. Gill, Opinion of the Faculty, dated May 7, 1990 (attached to Hupp Affidavit as Exhibit B).

On December 16, 1992, Gill applied for readmission to FPLC. His application was denied by the ASC on March 8, 1993, and that denial was upheld by the Appeals Panel for the ASC on July 20, 1993.

Plaintiff initiated the instant action on May 3, 1993.

## Discussion

### 1. Summary Judgment Standard

Under Rule 56(c), Fed. R. Civ. P., summary judgment is appropriate if the evidence before the court shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

The summary judgment process

> involves shifting burdens between the moving
> and the nonmoving parties. Initially, the

5

> onus falls upon the moving party to aver "'an absence of evidence to support the nonmoving party's case.'" Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). Once the moving party satisfies this requirement, the pendulum swings back to the nonmoving party, who must oppose the motion by presenting facts that show that there is a "genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986) (citing Fed. R. Civ. P. 56(e)). . . .

LeBlanc v. Great American Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993), cert. denied, ___ U.S. ___, 114 S. Ct. 1398 (1994).

"Essentially, Rule 56(c) mandates the entry of summary judgment 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Mottolo v. Fireman's Fund Ins. Co., 43 F.3d 723, 725 (1st Cir. 1995) (quoting Celotex Corp., supra, 477 U.S. at 322). When the nonmoving party bears the burden of proof at trial and fails to make such a showing, "there can no longer be a genuine issue as to any material fact: the failure of proof as to an essential element necessarily renders all other facts immaterial, and the moving party is entitled to judgment as a matter of law." Smith v. Stratus Computer, Inc., 40 F.3d 11, 12 (1st Cir. 1994) (citing Celotex Corp., supra, 477 U.S. at 322-23), petition for cert. filed, 63 U.S.L.W. 3644 (U.S. Feb. 21,

6

1995) (No. 94-1416).

In determining whether summary judgment is appropriate, the court construes the evidence and draws all justifiable inferences in the nonmoving party's favor.  Anderson, supra, 477 U.S. at 255; Data Gen. Corp. v. Grumman Sys. Support Corp., 36 F.3d 1147, 1159 (1st Cir. 1994)

## 2.  Section 504 Claim

In Count I of his complaint, plaintiff alleges that FPLC discriminated against him on the basis of a handicapping condition in violation of section 504 of the Rehabilitation Act of 1973 when it dismissed him as a student and when it subsequently refused to readmit him.

Section 504 states, in relevant part,

> No otherwise qualified individual with a disability in the United States, as defined in [29 U.S.C. § 706(8)], shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance[2] . . . .

29 U.S.C. § 794(a) (Supp. 1994).

The term "individual with a disability" is defined by the

---

[2]FPLC does not dispute that it receives federal financial assistance and is thereby subject to section 504.

7

Act to mean "any person who (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such impairment, or (iii) is regarded as having such an impairment." 29 U.S.C. § 706(8)(B).

In order to maintain a claim under section 504 of the Rehabilitation Act, plaintiff must show that (1) he was "disabled" within the meaning of the Act, (2) he was "otherwise qualified" to participate in the Juris Doctor program at FPLC, (3) he was excluded from that program, (4) the exclusion was due solely to his disability. See, e.g., Cook v. Rhode Island Dep't of Mental Health, Retardation, and Hosps., 10 F.3d 17, 22 (1st Cir. 1993). Plaintiff bears the burden of proving each element of his claim. Id.

Defendant admits that plaintiff was dismissed from its Juris Doctor program, and further admits, for the purposes of its summary judgment motion only, that plaintiff is an individual with a disability.[3] However, defendant contends that summary judgment is appropriate because plaintiff was not "otherwise qualified" for FPLC's program and was not denied participation in

---

[3]Plaintiff alleges that he suffers from Post Traumatic Stress Syndrome as a result of growing up with alcoholic parents, Amended Complaint ¶ 6, and stress-induced poor handwriting, id. ¶ 23.

8

said program solely because of his disability.

### a. Otherwise Qualified

"'An otherwise qualified person is one who is able to meet all of a program's requirements in spite of his handicap.'" School Bd. of Nassau County v. Arline, 480 U.S. 273, 287 n.17 (1987) (quoting Southeastern Community College v. Davis, 442 U.S. 397, 406 (1979)).

The determination of whether an individual is "otherwise qualified" involves two steps. First, as the Supreme Court's language in Southeastern Community College suggests, the court must consider whether an individual can meet a program's requirements in spite of his or her handicap or disability. If the individual is unable to do so, the court must further consider whether any "reasonable accommodation" by the program would enable the individual to meet the program's requirements. If an individual can meet the program's requirements with reasonable accommodations, then the individual is "otherwise qualified" to participate in the program. Arline, supra, 480 U.S. at 287 n.17; Wynne v. Tufts Univ. Sch. of Medicine [Wynne I], 932 F.2d 19, 24-25 (1st Cir. 1991), cert. denied, ___ U.S. ___, 113 S. Ct. 1845 (1993).

This "otherwise qualified-reasonable accommodation" analysis

is intended to strike "a balance between the statutory rights of the handicapped to be integrated into society and the legitimate interests of federal grantees in preserving the integrity of their programs . . . ." Alexander v. Choate, 469 U.S. 287, 300 (1985). In the education context, the First Circuit strikes this balance as follows:

> in determining whether an aspiring . . .
> student meets section 504's "otherwise
> qualified" prong, it is necessary to take
> into account the extent to which reasonable
> accommodations that will satisfy the
> legitimate interests of both the school and
> the student are (or are not) available and,
> if such accommodations exist, the extent to
> which the institution explored those
> alternatives.

Wynne v. Tufts Univ. School of Medicine [Wynne II], 976 F.2d 791, 792 (1st Cir. 1992), cert. denied, ___ U.S. ___, 113 S. Ct. 1845 (1993).

Here, there is no dispute that plaintiff was dismissed from FPLC on March 31, 1990, because the ASC found his February 27 plan to overcome academic deficiencies to be inadequate and found that he lacked the abilities to complete the degree program.

Further, in support of its contention that plaintiff is not otherwise qualified for FPLC's academic program, defendant submits the Opinion of the Faculty in plaintiff's appeal of his dismissal, which details the events leading to that dismissal.

10

The Opinion of the Faculty begins as follows:

> Appellant ROBERT D. GILL (appellant) completed his fifth (5th) semester as a Juris Doctor (JD) degree student in December 1989, having earned in that semester three (3) credits of D in Remedies and two (2) credits of F in In-House Lawyering. His overall GPA was 2.22, and he had earned sixty-nine (69) credits toward the eighty-four (84) required for the JD degree. However, including his fifth (5th) semester, appellant had accumulated twelve (12) credits of grades below C minus. By operation of Part VI Rule 1(a)(3) of the Law Center's Academic Rules (Rules), any student who has earned more than nine (9) credits of grades below C minus is "not eligible to continue as a candidate for the Juris Doctor degree, except under such terms as may be established by the Committee on Academic Standing."

Opinion of the Faculty at 1.

Plaintiff was subsequently notified of his ineligibility to continue his studies and was advised "to submit by February 16, 1990, a plan for overcoming his academic deficiencies as required by Rule VI 6 and 7 in order to pursue reinstatement as a degree candidate through the Academic Standing Committee (ASC) process." Id. Plaintiff was also invited to meet with Academic Dean Linda Hupp "for assistance in understanding and successfully meeting the requirements of the academic review process." Id.

On February 28, plaintiff met with two members of the ASC and submitted to them his plan to overcome academic deficiencies. Id. at 1-2. Plaintiff's plan stated, under the heading

11

"Overcoming Deficiencies",

> "I propose [crossed out and replaced with a
> hand-written "have"] to quit my part time job
> of sixteen hours a week.  I propose to switch
> to a high carbohydrate low fat diet.  I
> propose to limit my intake of red meat,
> sugar, and caffeine.  I propose to eat more
> complex carbohydrates and fish.  I propose to
> meditate more to overcome my anger at
> whatever institutional deficiencies I see at
> Franklin Pierce Law Center.  I propose the
> following study schedule in order to utilize
> my time more effectively."

Id. at 1-2 (quoting Plaintiff's Student Plan to Overcome Academic

Deficiencies) (brackets in original).

As a result of the February 28 meeting, by letter dated

March 7, 1990, ASC member Professor Friedman posed three

questions to plaintiff regarding various actions he had taken

relative to his course of study.  Friedman requested a response

from Gill to said questions by March 13, 1990.  Id. at 2.

On March 21, 1990, after receiving no response from Gill,

the ASC issued its decision dismissing plaintiff under Part VI,

Rules 8(c)(1) and (4).[4]  Plaintiff's subsequent appeal of his

_____

[4]Rule 8(c) provides,

> A decision to dismiss a student shall be
> based on finding the student:
> (1) Lacks the abilities to complete the
> degree program;
> (2) Is unlikely to satisfy terms of
> probation;
> (3) Has failed to satisfy terms of

12

dismissal to the FPLC faculty was unsuccessful.

On December 16, 1992, plaintiff applied for readmission to FPLC. His application was denied by the ASC on March 8, 1993, and that denial was upheld by the Appeals Council on July 20, 1993. The decision of the Appeals Council (attached to Hupp Affidavit as Exhibit C) indicates, inter alia, that plaintiff's application for readmission was properly rejected because plaintiff failed to meet his burden of submitting a petition and a written plan which conforms to the requirements of the Rules.

On the basis of the evidence before it, the court finds that defendant has met its burden of establishing that plaintiff was not qualified to continue his studies at FPLC and was not qualified for readmission to FPLC. The court further finds that plaintiff, in failing to respond to defendant's motion, has not met his burden of creating a genuine issue for trial as to whether he was qualified to continue his studies at FPLC.

b. Reasonable Accommodations

The court turns next to the question of whether any reasonable accommodations by FPLC would have enabled plaintiff to

_____

probation; or
(4) Has failed to present a plan to the Committee.

13

meet the school's requirements.

Under the Rehabilitation Act, "there is a real obligation on the academic institution to seek suitable means of reasonably accommodating a handicapped person . . . ." Wynne I, supra, 932 F.2d at 25. However, in determining whether this obligation has been met, the First Circuit has held that "an academic institution can be expected to respond only to what it knows (or is chargeable with knowing)." Wynne II, supra, 976 F.2d at 795. This means that in order for a school "'to be liable under the Rehabilitation Act, [it] must know or be reasonably expected to know of [a student's] handicap.' Nathanson v. Medical College of Pa., 926 F.2d 1368, 1381 (3d Cir. 1991). A relevant aspect of this inquiry is whether the student ever put the . . . school on notice of his handicap by making 'a sufficiently direct and specific request for special accommodations.' Id. at 1386." Id.

Plaintiff alleges that he disclosed his post-traumatic shock syndrome disability in the personal statement portion of his application to FPLC. Amended Complaint ¶ 6. In response thereto, FPLC Associate Dean Linda Hupp submits a copy of Gill's personal statement and asserts in her affidavit that plaintiff "did not disclose any disability, including post-traumatic shock syndrome" in said statement." Hupp Affidavit ¶ 3. Hupp further

14

states, "[a]t no time prior to his dismissal did Gill assert any disability or need for accommodations in connection with his law studies." Id. ¶ 6.

The court's review of the copy of plaintiff's personal statement attached to Hupp's affidavit reveals that, although plaintiff did identify himself as the "Adult Child of an Alcoholic", he did not state that he suffered from post-traumatic stress syndrome, nor did he otherwise indicate that he required certain reasonable accommodations.

The court finds that the evidence submitted by defendant establishes that FPLC did not know, and had no reason to know, that plaintiff had a disability for which he required reasonable accommodations. Further, in response to defendant's properly supported motion, plaintiff has failed to submit any evidence to create a genuine issue as to whether FPLC knew or had reason to know of his disability and of his corresponding need for reasonable accommodations.

Under these circumstances, the court finds that FPLC cannot be held liable under section 504. Defendant's motion for summary judgment is accordingly granted as to Count I.[5]

_____

[5]Because plaintiff has failed to establish that a genuine issue exists as to whether he was "otherwise qualified" to continue his studies at FPLC, it is unnecessary to consider whether plaintiff's dismissal was due solely to his disability.

15

## 2. Breach of Contract

In Count III of his complaint, plaintiff alleges that FPLC's published Academic Rules and Regulations "constitute an express and implied contract" with him, which FPLC breached when it dismissed him and then declined his application for readmission. Amended Complaint ¶¶ 37-41.

Assuming arguendo that the Academic Rules and Regulations constitute a contract, FPLC contends that no violation of that contract occurred. In support thereof, defendant submits the affidavit of Associate Dean Linda Hupp, in which she states that "FPLC adhered to its academic rules in all of its actions respecting Gill's dismissal and application for readmission . . . ." Hupp Affidavit ¶ 9.

In addition to the rather conclusory statement of Dean Hupp, defendant submits (1) copies of the relevant FPLC Academic Rules and Regulations and (2) the decisions from plaintiff's appeal of his dismissal and his appeal of FPLC's denial of his application for readmission.

The court finds that these documents establish that FPLC followed the process set forth in the relevant Academic Rules and

---

However, the court notes that the evidence before it establishes that plaintiff was dismissed because of his academic deficiencies and not because of any disability.

Regulations when it dismissed plaintiff and when it denied him readmittance. The court further finds that plaintiff, having failed to come forward with any evidence to show that there was a breach of his purported contract with FPLC, has not met his burden of creating a genuine issue for trial on his breach of contract claim. Defendant's Motion for summary judgment is therefore granted as to Count III.

3. Defamation

In Count IV of his complaint, plaintiff alleges that the ASC's letter of March 21, 1990, which dismisses him from FPLC, "is defamatory and has created a stigma to Plaintiff's reputation." Amended Complaint ¶ 43. He further alleges that the letter "has and will interfere with plaintiff['s] seeking admission to another law school." Id.

To establish defamation under New Hampshire law, "there must be evidence that a defendant failed to exercise reasonable care in publishing, without a valid privilege, a false and defamatory statement of fact about the plaintiff to a third party." Independent Mechanical Contractors v. Gordon T. Burke & Sons, 138 N.H. 110, 118, 635 A.2d 487, 492 (1993) (citing RESTATEMENT (SECOND) OF TORTS § 558 (1977); 8 RICHARD B. MCNAMARA, NEW HAMPSHIRE PRACTICE, PERSONAL INJURY, TORT AND INSURANCE PRACTICE § 2 (1988)). See also

17

_Duchesnaye v. Munro Enters., Inc._, 125 N.H. 244, 250, 480 A.2d 123, 125-26 (1984) ("Liability in defamation actions has traditionally rested upon the defendant's intention to communicate the defamatory statement to someone other than the plaintiff, or at least upon negligent responsibility for such communication.").

Dean Hupp states in her affidavit that "[t]he letter of dismissal dated March 21, 1990 was not published to anyone other than Gill." Hupp Affidavit ¶ 10. Plaintiff has failed to come forward with evidence to create a genuine issue as to whether the letter was published to a third party. The court therefore finds that Gill's defamation claim fails as a matter of law. Defendant's motion for summary judgment is accordingly granted as to Count IV.


## Conclusion

For the reasons set forth herein, the unopposed motion for summary judgment filed by defendants FPLC and Robert M. Viles

18

(document 15) is granted.  The clerk's office shall enter

judgment accordingly.

SO ORDERED.

_____
Shane Devine, Senior Judge
United States District Court

May 17, 1995

cc:  Robert D. Gill, pro se
     Russell F. Hilliard, Esq.

19