**Evgeny OKMYANSKY, Plaintiff,**

v.

**HERBALIFE INTERNATIONAL OF AMERICA, INC., Defendant.**

No. CIV.A.03–10574–JLT.

United States District Court,
D. Massachusetts.

Nov. 8, 2004.

Pavel Bespalko, Law Offices of Joel Eigerman, Boston, MA, Joel Z. Eigerman, Boston, MA, for Evgeny Okmyansky, Plaintiff.

Gary R. Greenberg, Greenberg Traurig, LLP, Boston, for Herbalife International of America, Inc., Defendant.

Steven A. Kaufman, Ropes & Gray LLP, Boston, MA, Annapoorni R. Sankaran, Greenberg Traurig, LLP, Boston, MA, for Herbalife International of America, Inc., Defendant.

### *MEMORANDUM*

TAURO, District Judge.

This is an action for breach of contract brought by Evgeny Okmyansky ("Okmyansky"), a Massachusetts resident and distributor of health and diet food supplement products. Defendant Herbalife International of America, Inc. ("Herbalife") is a multi-level, health food marketing company. Herbalife is a Nevada corporation with its principal place of business in California. Okmyansky seeks to recover over $500,000 in commissions and other compensation allegedly due under his distributorship agreement. Presently before this court are Okmyansky's and Herbalife's cross-motions for summary judgment.

### Background

Herbalife develops and markets weight management products, dietary supplements, and nutritional foods.[1] Herbalife sells its products through an international network of independent distributors.[2] These independent distributors generate profit in three ways. First, distributors purchase Herbalife products at substantial discounts and sell to the public at higher prices.[3] Second, distributors recruit other individuals to become Herbalife distributors.[4] Herbalife pays a "commission" to the recruiting distributor ("sponsor") when these recruits ("down-line distributors") purchase Herbalife products directly from

---

1. Local Rule 56.1 Statement of Material Facts not in Dispute for Issues Raised in the Order ("Def's. Statement of Undisputed Facts") ¶ 1.

2. *Id.*

3. Mem. in Supp. of Pl.'s Mot. for Summ. J. at 3.

4. Am. Compl. ¶ 5.

the company.[5] Third, a sponsor can earn "royalties" based on the volume of sales attributed to all of his down-line distributors and all of the sales attributed to recruits of his down-line distributors (or a sponsor's "lineage").[6]

In July of 1992, Okmyansky entered into a distributorship agreement with Herbalife.[7] In 1994, Okmyansky realized that several of the down-line distributors in his recruitment lineage had been "enticed to sign separate and independent distributorship agreements by other sponsors."[8] Under Herbalife's Rules of Conduct and Distributor Policies ("Rules of Conduct"), a distributor can be attributed to only one sponsor.[9] The first sponsor to recruit a distributor is "considered the valid Distributorship."[10] Within this marketing structure, however, recruitment lineages frequently become entangled.[11] Herbalife refers to this double-sponsorship as a prohibited "dual-distributorship."[12] With respect to these dual-distributorship disputes, Rule 4–C of the Rules of Conduct specifically provides that "Herbalife has *sole and absolute discretion* to determine the disposition of *both* Distributorships."[13]

Okmyansky informed Herbalife that several of his down-line distributors were operating under prohibited dual-distributorships and requested monetary compensation for the payments (royalties and commissions) that had been improperly dispersed to other sponsors.[14] Between 1995 and 1999, Herbalife conducted an investigation and determined that the down-line distributors belonged in Okmyansky's lineage.[15] Herbalife remedied the dual-distributorships by returning the distributors to Okmyansky's lineage.[16] Herbalife, though, refused to pay Okmyansky the commissions and royalties that Herbalife had formerly dispersed to other sponsors.[17] Okmyansky contends that, under the distributorship agreement, Herbalife must pay him the commissions and royalties attributable to the activities of the down-line distributors throughout the period of the improper dual-distributorships.[18] Herbalife disagrees and argues that under the plain language of the Rules of Conduct, the company has broad discretion to remedy dual-distributorships.[19]

In February of 2003, Okmyansky brought suit in the Middlesex Superior

5.  Aff. of Pavel Bespalko in Connection with Parties' Cross–Mot.'s for Summ. J. ("Bespalko Aff.") Ex. B at 7.

6.  Mem. in Supp. of Pl.'s Mot. for Summ. J. at 3; Bespalko Aff. Ex. B at 14 (defining "lineage").

7.  Def.'s Statement of Undisputed Facts ¶ 2; Am. Compl. ¶ 4.

8.  Am. Compl. ¶ 13.

9.  Bespalko Aff. Ex. C at 3 (Rule 4–A).

10.  *Id.* (Rule 4–C).

11.  *See, e.g., Miron v. Herbalife Int'l, Inc.,* No. 99–17647, 2001 WL 564338 (9th Cir. May 24, 2001).

12.  *See* Def.'s Statement of Undisputed Facts ¶ 5.

13.  Bespalko Aff. Ex. C at 3 (emphasis added).

14.  Am. Compl. ¶ 14; Decl. of Jackie Fisher, submitted in supp. of Mot. for Summ. J. of Def. ("Fisher Decl.") ¶ 4.

15.  Fisher Decl. ¶ 5, Ex. 1.

16.  *Id.* (explaining that Herbalife had moved the down-line distributors to Okmyansky's lineage "without monetary adjustments").

17.  *Id.*

18.  Mem. in Supp. of Pl.'s Mot. for Summ. J. at 6.

19.  Mem. of Law in Supp. of Mot. for Summ. J. of Def. at 13–15.

Court of the Commonwealth of Massachusetts.[20] On March 28, 2003, Herbalife removed this action pursuant to 28 U.S.C. § 1441.[21] This court has subject matter jurisdiction under 28 U.S.C. § 1332.

### Discussion

As required by this court, Okmyansky and Herbalife filed cross-motions for summary judgment on the contractual issue of whether Herbalife had authority to refuse to pay Okmyansky the commissions and royalties.[22] A motion for summary judgment is meant "to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required."[23] Under Federal Rule of Civil Procedure 56, summary judgment is appropriate only if the record reveals that there is "no genuine issue as to any material fact and ... the moving party [has] demonstrated an]˙ entitle[ment] to a judgment as a matter of law."[24]

It is the responsibility of the "party seeking summary judgment [to] make a preliminary showing that no genuine issue of material fact exists. Once the movant has made this showing, the nonmovant must contradict the showing by pointing to specific facts demonstrating that there is, indeed, a trialworthy issue."[25]

In deciding whether to allow a motion for summary judgment, a court " 'must view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor.' "[26] But, a court "need not credit 'conclusory allegations, improbable inferences, and unsupported speculation.' "[27]

Of course, "[t]he happenstance that all parties seek summary judgment neither alters the yardstick nor empowers the trial court to resolve authentic disputes anent material facts."[28] A court considering cross-motions for summary judgment "must evaluate each motion separately, being careful to draw inferences against each movant in turn."[29]

### A. Law Governing the Contract

Okmyansky asserts that Massachusetts law governs this dispute, and Herbalife argues for California law. Under both California and Massachusetts law, absent ambiguity, the plain meaning of the con-

20. Def.'s Statement of Undisputed Facts ¶ 14.

21. *Id.*

22. *See* Order of this court on June 21, 2004[# 58].

23. *Mullin v. Raytheon Co.,* 164 F.3d 696, 698 (1st Cir.1999) (quoting *Wynne v. Tufts Univ. Sch. of Med.,* 976 F.2d 791, 794 (1st Cir. 1992)).

24. Fed.R.Civ.P. 56(c). "In the lexicon of Rule 56, 'genuine' connotes that the evidence on the point is such that a reasonable jury, drawing favorable inferences, could resolve the fact in the manner urged by the nonmoving party, and 'material' connotes that a contested fact has the potential to alter the outcome of the suit under the governing law if the controversy over it is resolved satisfactorily to the nonmovant." *Blackie v. Maine,* 75 F.3d 716, 721 (1st Cir.1996).

25. *Id.* (quoting *Nat'l Amusements, Inc. v. Town of Dedham,* 43 F.3d 731, 735 (1st Cir. 1995)).

26. *Mullin,* 164 F.3d at 698 (quoting *Griggs–Ryan v. Smith,* 904 F.2d 112, 115 (1st Cir. 1990)).

27. *Bloomfield v. Bernardi Automall Trust,* 170 F.Supp.2d 36, 40 (D.Mass.2001) (quoting *Medina–Munoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir.1990)).

28. *Griggs–Ryan v. Smith,* 904 F.2d 112, 115 (1st Cir.1990).

29. *Id.*

tractual language controls.[30] Neither party asserts that California or Massachusetts courts would read the contract in a special or unique way. Because nothing turns on a difference between the contract laws of Massachusetts and California, this court need not decide which body of law governs the dispute.[31]

### B. Terms of the Contract

Both parties agree that the contract comprises more than the standard Distributorship Agreement form signed by Okmyansky in 1992.[32] The written contract between the parties includes the Herbalife Career Book, which contains the terms of Okmyansky's compensation and the Rules of Conduct.[33] Okmyansky received the Career Book at the time he executed the Distributorship Agreement in 1992.[34] Although the Career Book has gone through many editions since that time,[35] neither party claims that any particular edition would resolve the present dispute differently than any other edition.[36] There is no dispute, therefore, over which documents constitute the written terms of the con-

tract. The parties simply disagree about whether the contract allows Herbalife to remedy a dual-distributorship without awarding retroactive compensation to the valid sponsor.

### C. Herbalife's Discretion to Remedy Dual–Distributorships

Rule 4 of the Rules of Conduct specifically addresses the problem of dual-distributorships. Rule 4–A provides that a down-line distributor may have only one sponsor.[37] Rule 4–C specifies that the first sponsor to successfully recruit a down-line distributor has priority over any subsequent sponsors.[38] When subsequent sponsors enlist previously recruited distributors, Rule 4–C gives Herbalife "*sole and absolute discretion* to determine the disposition of *both* Distributorships, as well as any penalties or sanctions it deems necessary and appropriate for the Distributorship and the Sponsoring organization(s)." [39]

Okmyansky argues that once Herbalife has exercised its discretion and returned down-line distributors to the original spon-

---

**30.** *See* CAL. CIV. CODE § 1638 ("The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity."); *Miscione v. Barton Dev. Co.*, 52 Cal.App.4th 1320, 1326, 61 Cal.Rptr.2d 280 (Cal.App. 4th Dist.1997) ("Generally speaking, 'the rules of interpretation of written contracts are for the purpose of ascertaining the meaning of the *words used* therein.' ") (citations omitted); *Citation Ins. Co. v. Gomez*, 426 Mass. 379, 688 N.E.2d 951, 952 (1998) (explaining that if there is no ambiguity, courts will construe the words of the contract in their "usual and ordinary sense").

**31.** *See Royal Bus. Group Inc. v. Realist, Inc.*, 933 F.2d 1056, 1064 (1st Cir.1991); *Fashion House, Inc. v. K mart Corp.*, 892 F.2d 1076, 1092 (1st Cir.1989) ("When a choice-of-law question has been reduced to the point where nothing turns on more precise refinement, that should be the end of the matter.").

**32.** Mem. in Supp. of Pl.'s Mot. for Summ. J. at 1–4; Def.'s Statement of Undisputed Facts ¶ 3.

**33.** Mem. in Supp. of Pl.'s Mot. for Summ. J. at 3–4; Def.'s Statement of Undisputed Facts ¶¶ 3–4.

**34.** Am. Compl. ¶¶ 8–9; Def.'s Statement of Undisputed Facts ¶ 4.

**35.** Def.'s Statement of Undisputed Facts ¶ 4.

**36.** This court will, therefore, refer to the version of the Rules of Conduct provided by the Plaintiff in Exhibit C of the Affidavit of Pavel Bespalko.

**37.** Bespalko Aff. Ex. C at 3.

**38.** *Id.*

**39.** *Id.* (emphasis added).

sor, Herbalife *must* compensate the rightful sponsor for royalties and commissions wrongfully paid to other sponsors throughout the period of the dual-distributorships.[40] This court disagrees.

A "disposition" is a final arrangement, a settlement, or a resolution.[41] Like the ordinary resolution of a civil case, the disposition of "both" distributorships naturally includes a final arrangement of the recruitment lineages as well as any monetary compensation. Under Rule 4–C, Herbalife had the discretion to leave the down-line distributors in the second sponsor's lineage, *prospectively* denying Okmyansky royalties and commissions attributable to future sales activities.[42] Here Herbalife chose instead to return the down-line distributors to Okmyansky's lineage. This decision, though, does not obligate Herbalife to pay *retroactive* compensation to the original sponsor.

This interpretation of Rule 4–C is confirmed by other provisions in the Rules of Conduct. The introduction to the Rules of Conduct provides,

> In its *sole and absolute discretion*, Herbalife may impose *any remedy* or sanction it determines best addresses any breach of the Rules of Conduct & Distributor Policies. Herbalife also reserves the right in its *absolute discretion* to waive wholly or partially or to pardon or forgive wholly or partially any

breach of any of the rules contained in this section.[43]

Furthermore, Rule 8–L reiterates that whenever there is a violation of the Rules of Conduct, "Herbalife may in its *sole discretion* take whatever *actions or measures* it deems necessary and appropriate."[44]

Understood in this context, a Rule 4–C "disposition" of the distributorships includes any remedies, actions, or measures with respect to "*both* Distributorships."[45] Given the breadth of this language, this court finds that a refusal to pay retroactive damages to an injured sponsor is within Herbalife's discretion under the contract. Absent bad faith, this court must defer to Herbalife's disposition.[46]

### Conclusion

For the foregoing reasons, Herbalife's motion for summary judgment is ALLOWED and Okmyansky's motion for summary judgment is DENIED.

AN ORDER WILL ISSUE.

---

**40.** Mem. in Supp. of Pl.'s Mot. for Summ. J. at 6.

**41.** WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 365 (1986).

**42.** Otherwise, Herbalife's "absolute discretion" to determine the disposition of both Distributorships would have no meaning. *See* Bespalko Aff. Ex. C at 3 (Rule 4–C).

**43.** *Id.* at 1 (emphasis added).

**44.** *Id.* at 5 (emphasis added).

**45.** *Id.* at 1 (Introduction), 3 (Rule 4–C), 5 (Rule 8–L).

**46.** *See Carma Developers, Inc. v. Marathon Dev. Cal., Inc.,* 2 Cal.4th 342, 6 Cal.Rptr.2d 467, 826 P.2d 710 (1992) (deferring to a commercial landlord's contractually authorized, good faith, exercise of discretion to terminate a lease); *see also Dunkin' Donuts, Inc. v. Gav-Stra Donuts, Inc.,* 139 F.Supp.2d 147 (D.Mass.2001) (deferring to Dunkin' Donuts good faith decision to terminate a franchise).