USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT _________________________ No. 95-1929 PATRICK PERKINS, Plaintiff, Appellant, v. BRIGHAM & WOMEN'S HOSPITAL and GEORGE H. KAYE, Defendants, Appellees. _________________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Douglas P. Woodlock, U.S. District Judge] ___________________ _________________________ Before Selya, Boudin and Lynch, Circuit Judges. ______________ _________________________ Daniel S. Sharp, with whom Elaine Whitfield Sharp, Barbara ________________ _______________________ _______ C. Johnson, and Whitfield Sharp & Sharp were on brief, for ___________ _________________________ appellant. Richard P. Ward, with whom Bonnie B. Edwards and Ropes & _______________ _________________ ________ Gray were on brief, for appellees. ____ _________________________ March 21, 1996 _________________________ SELYA, Circuit Judge. In this case, Brigham & Women's SELYA, Circuit Judge. _____________ Hospital (the Hospital) allegedly fired plaintiff-appellant Patrick Perkins, an African-American male, because it discovered that he had engaged in a despicable pattern of work-related sexual harassment over a protracted period of time. Apparently convinced that the best defense is a good offense, Perkins sued. Unimpressed by this effort to turn the tables, the district court rejected Perkins' claims of race-based discrimination at the summary judgment stage. On appeal, Perkins accuses the court of straying down the wrong path. Undertaking de novo review, see ___ Smith v. F.W. Morse & Co., ___ F.3d ___, ___ (1st Cir. 1996) [No. _____ ________________ 95-1556, slip op. at 29], we find no navigational error. I. BACKGROUND I. BACKGROUND We depict the facts (which are by any standard unpleasant) in the light least hostile to the appellant, consistent with record substantiation. See, e.g., Garside v. ___ ____ _______ Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990). In this _________________ process, we weed out "conclusory allegations, improbable inferences, and unsupported speculation." Medina-Munoz v. R.J. ____________ ____ Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990). ____________________ The appellant worked at the Hospital as a patient care assistant. He garnered generally favorable performance evaluations over a ten-year span, but his record was marred by several instances of misconduct (which led to warnings and/or suspensions). In mid-1990 a more serious incident occurred: in the dead of night, the appellant invaded a restricted lounge 2 where two female radiology technicians were sleeping between cases. One woman claimed that, upon awakening, she discovered the appellant staring at her from the foot of her bed. The technicians reported the occurrence and informed Hospital officials that the appellant had made sexual overtures to each of them on prior occasions.1 A supervisor added background information, revealing that the appellant habitually uttered "flirtatious statements." The Hospital moved to terminate the appellant's employment in the wake of this episode but the in-house Grievance Review Board (the Board) reduced the proposed penalty to a four- week suspension without pay. Withal, the Board acknowledged the appellant's unfortunate penchant for making salacious comments to female employees, and advocated "appropriate disciplinary action" if this meretricious behavior continued. In November of 1991 roughly seventeen months after his nocturnal caper in the technicians' lounge the appellant telephoned a nurse while she was participating in a surgical procedure and loudly warned her not to call him "Pat." There was a history leading up to this call, and the nurse demanded an investigation of what she described as the appellant's "harassment" of her. Perkins' supervisor, an African-American  ____________________ 1According to one woman, Perkins often asked her out on dates, and in one instance, when she replied that she was married, he retorted that "I don't want your husband, I want you." The other woman revealed that when, in the course of Perkins' amorous pursuit, she mentioned her gravidity, he responded: "Pregnant women turn me on." 3 woman, suspended him pending further review of the incident. George Kaye, the Hospital's vice-president for human resources, considered the nurse's complaint in conjunction with reports from operating room managers that the appellant continued to engage in inappropriate sexual banter and innuendo. Kaye retained Nancy Avery, an independent social worker, to conduct an inquiry. The Hospital adopted an investigatory protocol calculated to provide a confidential forum in which female employees could safely discuss their experiences vis-a-vis the appellant. Avery's report was damning. It recounted numerous episodes of unacceptable behavior involving the appellant and myriad female employees. It would serve no useful purpose to take a complete inventory of these tawdry vignettes. Suffice it to say that the list includes instances in which the appellant described his sexual prowess in explicit detail, boasted about the length of his penis, exposed himself, patted a female employee's buttocks, and proposed a menage-a-trois. The report also memorialized the appellant's threats to retaliate against women who declined his advances by, for example, warning that he would slash their tires (and, in one case, that he would not be averse to attacking a woman in a garage). Kaye concluded that the appellant had engaged in the misconduct described by Avery, and cashiered him effective February 7, 1992. This time the Board, after hearing the appellant's denial of the allegations, upheld his ouster. 4 The appellant brought suit in a Massachusetts state court charging inter alia racial discrimination.2 The Hospital _____ ____ removed the case to a federal forum. Discovery lasted for over a year. When the Hospital thereafter requested summary judgment, the district court obliged. Overriding Perkins' objection, the court ruled as a matter of law that, although he had made out a prima facie case of racial discrimination under the McDonnell _________ Douglas burden-shifting model, see McDonnell Douglas Corp. v. _______ ___ ________________________ Green, 411 U.S. 792, 802 (1973), the Hospital had produced _____ evidence of a legitimate, nondiscriminatory justification for the discharge, namely, the extensive misconduct related in Avery's report, sufficient to meet its burden of production under that model; that the record revealed no evidence probative of pretext; and that, therefore, no rational factfinder could conclude that the Hospital dismissed Perkins on account of his race. See ___ Perkins v. Brigham & Women's Hosp., Civ. No. 93-11701- DPW (D. _______ ________________________ Mass. July 31, 1995) (D. Ct. Op.). In this appeal, Perkins abandons several of his original initiatives and concentrates his fire on the lower court's rejection of the race discrimination claims. He maintains that the court allowed brevis disposition on those ______ claims only because it overlooked, misconceived, and mischaracterized the relevant evidence, and then applied the  ____________________ 2The appellant named both Kaye and the Hospital as defendants. Because Kaye's liability (if any) could not conceivably be greater than the Hospital's, we treat the case as if the Hospital were the sole defendant and appellee. 5 wrong analytic framework. II. ANALYSIS II. ANALYSIS We begin our discussion of the merits by noting that, contrary to the appellant's position, there is no insurmountable obstacle blocking the use of Fed. R. Civ. P. 56 in the circumstances of this case. The function of summary judgment is "to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." Wynne v. Tufts Univ. Sch. of Med., 976 F.2d 791, 794 _____ ________________________ (1st Cir. 1992), cert. denied, 113 S. Ct. 1845 (1993). Here, the _____ ______ record, fairly read, contains no sign that the district court overlooked, misconceived, or mischaracterized the evidence. To the contrary, as the district court concluded, the record discloses no genuine issue as to any material event; and the undisputed facts, taken most favorably to the appellant, confirm that the Hospital is entitled to judgment as a matter of law. See, e.g., McCarthy v. Northwest Airlines, Inc., 56 F.3d 313, 315 ___ ____ ________ ________________________ (1st Cir. 1995) (collecting cases describing summary judgment standard); see also Medina-Munoz, 896 F.2d at 8 (discussing ___ ____ ____________ propriety of summary judgment even when "elusive concepts such as motive or intent" are at issue). We give credit where credit is due. The district court's opinion is both meticulous and scholarly. It treats every claim and item of evidence, and closes virtually every avenue that Perkins tries to travel on appeal. Because that is 6 so, we resist the temptation to transpose into our own words what has already been well expressed, preferring instead to affirm the judgment essentially on the basis of the opinion below. We pause only to add punctuation in a few spots.3 A A The appellant's principal complaint is that the district court analyzed his race discrimination claims under the McDonnell Douglas framework. He bases this complaint on his __________________ assumption that the record contains evidence sufficient to warrant deployment of the somewhat different framework constructed by the Court in Price Waterhouse Co. v. Hopkins, 490 ____________________ _______ U.S. 228, 258 (1989) (plurality op.).4 When, as now, a plaintiff alleges disparate treatment, he ordinarily has the burden of proving that the defendant took the adverse employment action (here, dismissal) because of a protected trait (here, race). The Price Waterhouse framework, where applicable, shifts _________________ the burden of persuasion to the employer.  ____________________ 3We think it is at least arguable that the Civil Rights Act of 1991, Pub. L. 102-166, 102, 105 Stat. 1071 (1991) (codified at 42 U.S.C. 2000e-2000e-16), applies in this case. But neither party cited this statute in the district court; that court did not refer to it in the opinion below; and the parties ignore it in their appellate briefs. Given this background, we do not base our decision on the 1991 Act (but we note that, if we were to apply it, the result that we reach in this appeal would not be affected). By like token, given the circumstances of this case, we see no need to differentiate between the appellant's parallel claims of race-based discrimination under federal and state law, respectively. 4The appellant does not contend that the district court erred in its performance of the McDonnell Douglas analysis, but, _________________ rather, that the analysis should not have been performed at all. 7 For present purposes, we need not explore the conditions under which Price Waterhouse might apply. The shift ________________ in the burden of persuasion contemplated by Price Waterhouse _________________ invariably depends upon a plaintiff's ability to produce or proffer evidence of the employer's discriminatory motive for the adverse job action that goes beyond the simple prima facie case showing needed to invoke McDonnell Douglas (which, when made, __________________ requires the employer to provide but not prove an explanation). See, e.g., Fields v. Clark Univ., 966 F.2d 49, 51- ___ ____ ______ ___________ 52 (1st Cir. 1992), cert. denied, 113 S. Ct. 976 (1993); Jackson _____ ______ _______ v. Harvard Univ., 900 F.2d 464, 467 (1st Cir.), cert. denied, 498 _____________ _____ ______ U.S, 848 (1990). Courts are in some disarray as to the type and kind of evidence that is sufficient to bring the Price Waterhouse _________________ framework into play.5 Compare Troupe v. May Dept. Stores Co., _______ ______ _____________________ 20 F.3d 734, 738 (7th Cir. 1994) with Ostrowski v. Atlantic Mut. ____ _________ _____________ Ins. Cos., 968 F.2d 171, 182 (2d Cir. 1992). In this case, __________ however, there is no reason to essay fine distinctions or seek to clarify the Price Waterhouse standard. The evidence as a whole ________________ simply will not support a reasonable inference that the Hospital discharged Perkins because it harbored an animus against him as an African-American. The extensive, point-by-point discussion of the proof in Judge Woodlock's detailed opinion renders further  ____________________ 5The Civil Rights Act of 1991, see supra note 3, does not ___ _____ supply a ready means of resolving this disagreement. See Tyler ___ _____ v. Bethlehem Steel Corp., 958 F.2d 1176, 1182 (2d Cir.), cert. _____________________ _____ denied, 506 U.S. 826 (1992). ______ 8 analysis on our part supererogatory. Because we find in this record nothing remotely resembling probative evidence of a race- based animus, the appellant's claim fails. B B The appellant attacks the lower court's reliance on affidavits supplied by three female employees that contain lurid firsthand accounts of his unsavory conduct. The court considered these affidavits in determining that the Hospital had advanced a nondiscriminatory rationale for its actions. See D. Ct. Op. at ___ 32. The appellant reasons that, because the affidavits were unavailable to the Hospital at the time it discharged him, the court could not mull them in analyzing the Hospital's motivation. This anfractuous reasoning distorts the applicable legal rule. It is true that an employer's proffered justification must be based on information that it knew and relied upon at the time it decided to take the adverse employment action. See ___ McKennon v. Nashville Banner Pub. Co., 115 S. Ct. 879, 885 (1995) ________ _________________________ (explaining that because an employee's misconduct was not discovered until after her discharge, the "employer could not have been motivated by knowledge it did not have and it [could not] claim that the employee was fired for the nondiscriminatory reason"); Sabree v. United Bhd. of Carpenters, 921 F.2d 396, 403 ______ _________________________ (1st Cir. 1990) (similar). That is to say, an employer cannot avoid liability in a discrimination case by exploiting a weakness in an employee's credentials or performance that was not known to the employer at the time of the adverse employment action (and 9 that, therefore, could not have figured in the decisional calculus). This rule is inapposite in the case at bar. Though the challenged affidavits did not exist when the Hospital handed the appellant his walking papers, the information that they contained was known to and fully absorbed by the Hospital at the time it fired Perkins. The affiants had reported their encounters with the appellant to Avery, their stories were embodied in her report, and the relevant information was factored into the Hospital's decisional process. Consequently, the court below did not err in considering the affidavits. C C The district court rejected the appellant's attempt to show intentional discrimination by comparing his treatment at the Hospital's hands with the treatment accorded to a Caucasian clinical supervisor who was also terminated for harassing female co-workers. See D. Ct. Op. at 38-42. Perkins assigns error. We ___ discern none. A claim of disparate treatment based on comparative evidence must rest on proof that the proposed analogue is similarly situated in material respects. See Morgan v. Harris ___ ______ ______ Trust & Savs. Bank, 867 F.2d 1023, 1026 (7th Cir. 1989); Lanear __________________ ______ v. Safeway Grocery, 843 F.2d 298, 301 (8th Cir. 1988). ________________ Accordingly, the proponent of the evidence must show that the individuals with whom he seeks to be compared have "engaged in the same conduct without such differentiating or mitigating 10 circumstances that would distinguish their conduct or the employer's treatment of them for it." Mitchell v. Toledo Hosp., ________ ____________ 964 F.2d 577, 582 (6th Cir. 1992). The test is whether a "prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated." Dartmouth Review v. Dartmouth College, 889 F.2d 13, ________________ _________________ 19 (1st Cir. 1989). While an exact correlation is not necessary, the proponent must demonstrate that the cases are "fair congeners." Id. at 19. ___ In this instance, Judge Woodlock's opinion illustrates beyond hope of contradiction, citing book and verse, that the requisite similarities are lacking. See D. Ct. Op. at 38-42. We ___ see no advantage in repastinating soil already well ploughed and instead adopt Judge Woodlock's characterization. However, we think it wise to emphasize two aspects. First, the Hospital had good reason to believe that the clinical supervisor's misconduct, while reprehensible, was markedly less serious than the appellant's misconduct. Second, the supervisor unlike the appellant did not have a history of repeated disciplinary actions over a ten-year period. III. CONCLUSION III. CONCLUSION We return to the point of our beginning. The appellant's several efforts to mount an offensive (including some initiatives that we have not discussed here) are uniformly unavailing. The record in this case simply will not support a reasonable inference that the Hospital discharged the appellant 11 because it harbored an animus against African-Americans. Consequently, we need go no further. Affirmed. Affirmed. ________ 12