<head>

<title>USCA1 Opinion</title>

<style type="text/css" media="screen, projection, print">

<!--

@import url(/css/dflt_styles.css);

-->

</style>

</head>

<body>

                 United States Court of Appeals
                      For the First Circuit
                       ____________________
  
 No. 97-2229
  
                     JOSE R. ALVAREZ-FONSECA,
                      Plaintiff - Appellant,
  
                                v.
  
           PEPSI COLA OF PUERTO RICO BOTTLING COMPANY,
                      Defendant - Appellee.
  
                       ____________________
  
           APPEAL FROM THE UNITED STATES DISTRICT COURT
  
                 FOR THE DISTRICT OF PUERTO RICO
  
[Hon. Anthony A. Alaimo,   Senior U.S. District Judge]
       [Hon. Juan M. Prez-Gimnez, U.S. District Judge]
                                 ____________________
  
                              Before
  
                     Torruella, Chief Judge,
  
                 Campbell, Senior Circuit Judge,
  
                    and Selya, Circuit Judge.
  
                      _____________________
  
     Juan Rafael Gonzlez-Muoz, with whom Gonzlez-Muoz &
 Quiones-Tridas was on brief for appellant.
     Graciela J. Belaval, with whom Martnez, Odell & Calabriawas on brief for appellee.
  
  
  
                       ____________________
  
                        August 5, 1998
                                  ____________________

         TORRUELLA, Chief Judge.  Plaintiff-appellant Jos R.
 Alvarez-Fonseca sued his former employer, defendant-appellee
 Pepsi Cola of Puerto Rico Bottling Company, under the Age
 Discrimination in Employment Act of 1967 ("ADEA"), as amended,
 29 U.S.C.  621-34 (1985 & Supp. 1996), and the Puerto Rico
 Anti-Discrimination Act (also known as Law 100), P.R. Laws Ann.
 tit. 29,  146, alleging that he was fired because of his age.  
 After trial, the jury returned a verdict for Alvarez on both
 claims.  The district court, however, granted Pepsi's renewed
 motion for judgment as a matter of law, set aside the jury's
 verdict, and entered judgment dismissing the complaint.  We
 affirm.
 I.  Background
          Early in the workday on October 13, 1993, Alvarez got
 into a fist-fight with another employee.  Alvarez was
 eventually discharged.  The fundamental question in this case
 is whether Alvarez was fired because of his age, or because of
 his involvement in the fight.  We recite the underlying facts
 in the light most favorable to the jury's verdict.  See Gibsonv. City of Cranston, 37 F.3d 731, 735 (1st Cir. 1994).
          Alvarez, the plaintiff, worked for Pepsi for thirty-
 four years, having been hired on October 2, 1959, at the age of
 20, and rising ultimately to the position of Production Line
 Supervisor of the canning line.  At the time of the incident
 that gave rise to this case, Alvarez was 54 years old, and the
 oldest of the four production supervisors.  During the years
 that he worked for Pepsi, Alvarez performed his duties in a
 satisfactory manner.  However, Alvarez was also known for his
 temper tantrums at work, commonly used obscene language there,
 and had been involved in at least two other fights at the
 plant.
          Alvarez reported to work at 5:00 A.M. on October 13,
 1993.  It was his first day of work after a two-week vacation,
 and he soon discovered that there were various problems that
 required his attention.  When the production line started, he
 noticed that the packing machine, which forms cardboard cartons
 that hold cans of Pepsi Cola, was producing defective cartons.  
 He concluded that the cardboard being used was of sub-standard
 quality.  He was also short one employee, who was absent
 without explanation.  Alvarez became upset at finding matters
 in such disarray upon his return from vacation.  Some time
 afterwards, Alvarez spoke with Wilfredo Cordero, the Materials
Manager,  to complain in uncouth, expletive-rich language about
 the management style of Jos Almeida, the Production Manager,
 who had been Alvarez's immediate superior since 1979.
      Around 7:00 A.M., Alvarez crawled under the packing
 machine to remove some cardboard from it.  Around 7:30 A.M.,
 Almeida arrived on the premises.  When he noticed that Alvarez
 was operating the machine, Almeida reprimanded him for doing
 so, reminding Alvarez that company procedure indicated that
 supervisors should not perform such work.  Alvarez explained
 that he had to operate the machine because he was short one
 employee and the operator was in the bathroom.  Almeida
 responded, however, by pointing out that during Alvarez's
 vacation, the work had been performed by one operator, without
 a supervisor, which suggested that supervisors did not need to
 operate the machines.  Alvarez retorted that Almeida's failure
 to supervise effectively was precisely the reason why the
 production line had continued to use inferior quality
 cardboard.
      Shortly thereafter, when Cordero approached Alvarez,
 the latter complained to him that there was a problem with the
 quality of the cardboard, and pointed to the pile of defective
 cartons that had been produced that morning.  As Materials
 Manager, Cordero was in charge of purchasing cardboard for use
 in the packing machine.  An  argument ensued, and Cordero told
 Alvarez that he was senile.  Alvarez responded by throwing a
 piece of cardboard at Cordero, which hit him on the chest, and
 telling Cordero to see whether the piece of cardboard was any
 good.  The argument escalated, and Cordero told Alvarez that he
 was ill-bred and belligerent.  Cordero also said that he would
 figure out a way to have Alvarez fired.  The Production
 Manager, Almeida, returned at that point and, after asking what
 was going on, told Alvarez to just go home, noting that he was
 getting into an argument, as usual.  Cordero then asked Almeida
 to talk to the Plant Manager, David Cuthberson, to have Alvarez
 fired.
      The argument became physical at that point, and other
 Pepsi employees intervened to attempt to break up the
 altercation.  Alvarez threw an object at Cordero, which struck
 him on the face and made his lower lip bleed.  Alvarez and
 Cordero fell to the floor in the course of pushing and shoving
 each other.  Cordero tried to overcome Alvarez, but was
 restrained by other employees.  While Cordero was being held by
 others, Alvarez punched him on the forehead.  Finally, a
 security guard arrived and ordered both Alvarez and Cordero to
 leave the premises immediately.
      Pursuant to Pepsi procedures, Almeida immediately
 prepared a contact sheet that documented the incident.  He
 wrote that Alvarez had demonstrated "aggressive conduct against
 a fellow worker without considering the consequences caused by
 his conduct, that he was engaged in a fight."
      Pepsi conducted an investigation of the incident.  On
 October 16, 1993, the Personnel Director, Vanessa Boneta, held
 a meeting with both Alvarez and Cordero, and asked them to
 present their versions of what had happened.  Alvarez admitted
 having provoked the incident, asked Cordero for forgiveness,
 and stated that he felt "repentant and sad for what [he] had
 done."  Boneta advised Alvarez that he could be fired or
 suspended for his conduct.  Pursuant to its workplace safety
 rules, Pepsi reserved its right to suspend or fire an employee
 who instigated a fight, threatened others with aggression, or
 became involved in physical horseplay.  Alvarez admits that he
 has been involved in several violent episodes at work over the
 years, explaining that it is sometimes necessary to use force
 in order to maintain discipline.
      After the meeting, Cordero was suspended without pay
 for thirty days, but no further disciplinary action was taken
 against him.  At the end of the thirty-day period, he returned
 to work as Materials Manager.  Alvarez, however, was suspended
 for sixty days.  He admits that he could have been fired, but
 notes that Pepsi chose merely to suspend him, in consideration
 of the many years that he had worked there.  It was the first
 time that he had ever been suspended from work.
      During the suspension period, Alvarez became
 depressed, nervous, and his blood pressure, which had risen
 dangerously before his vacation, rose again.  He thus sought
 treatment from the State Insurance Fund.  His condition
 improved some time soon after the sixty-day period ended, and
 he received a medical certificate stating that he was able to
 work, although he continued under the supervision of the State
 Insurance Fund.  He reported to work in early January 1994, but
 although Pepsi then renewed payment of his salary, Boneta told
 him that he could not start working again until he had obtained
 another medical certificate, this time from a physician
 designated by Pepsi.  He complied with this request, and
 returned with the second certificate on January 11, 1994.  
 Boneta, however, instructed Alvarez to return home and wait
 until further notice from Pepsi.
      For the next few weeks, Alvarez and Boneta remained
 in contact, but nothing concrete resulted either from Boneta's
 calls to Alvarez, or from Alvarez's visits to her office.  In
 February 1994, Alvarez met with Boneta and the Plant Manager,
 David Cuthberson.  At that meeting, Alvarez was offered an
 early retirement plan.  According to the offer, Pepsi would
 continue to pay his salary until December 31, 1994, if he
 agreed to retire early, on May 15, 1994, the date of his 55th
birthday.   The company would process his early retirement on
 that date, and permit him to liquidate his accumulated vacation
 pay.  The following month, in addition to his regular salary,
 he would begin to collect a pension payment of $392.39 per
 month for the rest of his life.   
      Alvarez, however, rejected the offer.  Instead, he
 and his attorney submitted a counterproposal for early
 retirement.  Upon receipt of this proposal, Pepsi ordered a new
 investigation of the October 13, 1993, incident.  Alvarez
 refused to participate in the new investigation.
      Nothing else happened until August 8, 1994, when the
 State Insurance Fund released him, having concluded that his
 condition was not related to work.  Later that month, Pepsi's
 payroll records were changed to reflect Alvarez's separation
 from Pepsi, and Pepsi stopped paying Alvarez his salary.  
 Alvarez never tendered his resignation to Pepsi, nor did Pepsi
 give him notice that he had been discharged.
      On August 16, 1995, Alvarez filed the instant suit
 against Pepsi in the U.S. District Court for the District of
 Puerto Rico, bringing claims under the ADEA and Puerto Rico Law
 100 on the basis of the allegation that the disparate treatment
 in the disciplinary measures imposed by Pepsi on Cordero and
 Alvarez was motivated by discriminatory age animus.  A one-day
 jury trial was held on February 13, 1997.  At the end of the
 plaintiff's case, Pepsi moved for a directed verdict, but the
 court denied the motion.  On the following day, the jury
 returned a verdict for Alvarez on both claims, and in addition
 found that Pepsi had willfully violated the ADEA.  The jury
 awarded Alvarez $73,373.39 in back pay, and $55,000 in
 compensatory damages.
      On April 1, 1997, Pepsi filed a motion under Fed. R.
 Civ. P. 50 renewing its earlier motion for judgment as a matter
 of law, as well as a motion under Fed. R. Civ. P. 59(a) for new
 trial and to amend judgment.  On July 25, 1997, the district
 court granted Pepsi's Rule 50 motion.  On September 12, 1997,
 the court entered judgment in favor of Pepsi dismissing the
 complaint.  Alvarez filed a timely notice of appeal on October
 14, 1997.
 II.  Jurisdiction and Standard of Review
      We have jurisdiction over this appeal, which is from
 a final decision of the U.S. District Court for the District of
 Puerto Rico.  See 28 U.S.C. 1291.  We review de novo a district
 court's decision to grant a motion under Rule 50 for judgment
 as a matter of law.  See Speen v. Crown Clothing Corp., 102
 F.3d 625, 628 (1st Cir. 1996).  When the court grants the
 motion and enters judgment for the movant notwithstanding the
 jury's verdict for the non-movant, we examine the evidence
 presented to the jury, and all reasonable inferences that may
 be drawn from such evidence, in the light most favorable to the
 jury verdict.  See Roln v. Municipality of San Juan, 1 F.3d
 74, 76 (1st Cir. 1993).  In doing so, moreover, we may not take
 into consideration the credibility of witnesses, resolve
 conflicts in testimony, or in any other manner weigh the
 evidence.  See Katz v. City Metal Co., 87 F.3d 26, 28 (1st Cir.
 1996).  We assume the veracity, however, of any admissions made
 and stipulations entered into by the party opposing the Rule 50
 motion, see Fed. R. Civ. P. 36(b), as well as any evidence
 derived from disinterested witnesses that has not been
 contradicted or impeached.  See Collazo-Santiago v. Toyota
 Motor Corp., No. 97-1365, ___ F.3d ___, slip op. at 12-13 (1st
 Cir. July 9, 1998).
      On review, the question before us is whether there
 was sufficient evidence to allow a reasonable jury to find that
 the plaintiff met his burden of proof under the ADEA and Puerto
 Rico Law 100.  See Acevedo-Daz v. Aponte, 1 F.3d 62, 66-67
 (1st Cir. 1993).  A non-moving party must submit more than a
 scintilla of evidence as to an issue on which it bears the
 burden of persuasion in order to resist or reverse the entry of
 judgment as a matter of law on that issue.  See Coyante v.
 Puerto Rico Ports Authority, 105 F.3d 17, 21 (1st Cir. 1997).  
 Thus, in order to support a jury finding on such an issue, the
 evidence presented must make the existence of the fact to be
 inferred more probable than its nonexistence.  See Katz, 87
 F.3d at 28.
 III.  Age Discrimination in Employment Act
      "The ADEA makes it unlawful for an employer to
 'discharge any individual or otherwise discriminate against any
 individual with respect to his compensation, terms, conditions,
 or privileges of employment, because of such individual's
 age.'"  Serrano-Cruz v. DFI Puerto Rico, Inc., 109 F.3d 23, 25
 (1st Cir. 1997) (quoting from text of the ADEA).  In raising a
 disparate treatment claim under the ADEA, a plaintiff bears the
 burden of persuading the factfinder that, because of his age,
 he was treated less favorably than other persons who were
 similarly situated in all relevant respects.  See DiBiase v.
 Smith Kline Beecham Corp., 48 F.3d 719, 726 (3d Cir. 1995); cf.Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 258
 (1981) (disparate treatment claim under Title VII); Mack v.
 Great Atlantic and Pacific Tea Co., 871 F.2d 179, 182 (1st Cir.
 1989) (same).   
      When a plaintiff provides direct evidence of
 discrimination, the issue may be put to a finder of fact
 without further ado.  However, when a plaintiff has not
 provided "direct evidence that the employer's actions were
 motivated by age, the familiar McDonnell Douglas framework
 governs" the order in which the evidence is presented.  
 Serrano-Cruz, 109 F.3d at 25 (citing McDonnell Douglas Corp. v.
 Green, 411 U.S. 792, 802-05 (1973)); see also Kelley v.
 Airborne Freight Corp., 140 F.3d 335, 348 (1st Cir. 1998).  
 Under that framework, the employee must first "prov[e] by the
 preponderance of the evidence a prima facie case of
 discrimination."  Burdine, 450 U.S. at 252-53.  In an ADEA
 case, the plaintiff must show "that: 1) he was at least 40
 years old; 2) met the employer's legitimate job expectations;
 3) was fired or constructively discharged; and 4) that age was
 not treated neutrally."  Ruiz v. Posadas de San Juan
 Associates, 124 F.3d 243, 247-48 (1st Cir. 1997).
      "[I]f the plaintiff succeeds in proving the prima
 facie case, the burden shifts to the defendant to articulate
 some legitimate, nondiscriminatory reason for the" adverse
 employment action suffered by the employee.  Burdine, 450 U.S.
 at 252-53; see also Kelley, 140 F.3d at 348.  To meet that
 burden, the defendant need only produce an explanation, and
 thus "need not persuade the court that it was actually
 motivated by the proffered reasons."  Burdine, 450 U.S. at 254.  
      A failure to comply with this easily-met requirement
 can be fatal, because defendant's "failure to introduce
 evidence of a nondiscriminatory reason will cause judgment to
 go against it unless the plaintiff's prima facie case is held
 to be inadequate in law or fails to convince the factfinder."  
 St. Mary's Honor Center v. Hicks, 509 U.S. 502, 510 n.3 (1993).  
 If the defendant satisfies its burden of production, however,
 then "the McDonnell Douglas framework -- with its presumptions
 and burdens -- is no longer relevant."  Id. at 510.  In such a
 situation, "[t]he plaintiff then has 'the full and fair
 opportunity to demonstrate,' through presentation of his own
 case and through examination of the defendant's witnesses,
 'that the proffered reason was not the true reason for the
 employment decision,' . . . and that [age] was."  Id. at 507-08
 (quoting Burdine, 450 U.S. at 256).   
      Although the plaintiff must then prove both that the
 defendant's explanation is false, and that the real reason
 behind the defendant's actions was discriminatory animus, it
 will not always be necessary for the plaintiff to present
 additional evidence of discrimination beyond that necessary to
 prove that the proffered reasons are pretextual.  As the
 Supreme Court has explained, "[t]he factfinder's disbelief of
 the reasons put forward by the defendant (particularly if the
 disbelief is accompanied by a suspicion of mendacity), may,
 together with the elements of the prima facie case, . . .
 permit the trier of fact to infer the ultimate fact of
 intentional discrimination."  St. Mary's Honor Center, 509 U.S.
 at 511 (emphasis added); see also Kelley, 140 F.3d at 349.  The
 reasonableness of the jury making such inference, however, is
 subject to review under Fed. R. Civ. P. 50, just as any other
 finding of fact.
      Pepsi, for the sake of argument, chooses not to
 dispute that Alvarez established a prima facie case under the
 ADEA, and Alvarez does not dispute that Pepsi articulated a
 legitimate, non-discriminatory reason for the way it treated
 him.  The only question before us is therefore whether a
 reasonable jury could have found that the reasons given by
 Pepsi were a sham, and that the actions taken by Pepsi with
 regard to Alvarez were motivated by discriminatory animus based
 on age.  In this case, we believe that no reasonable jury could
 find that Pepsi's proffered explanation for its actions with
 regard to Alvarez was a pretext masking discriminatory animus.
      Pepsi explained that it discharged Alvarez because he
 had violated its internal disciplinary rules, and that its
 decision to dismiss Alvarez was mandated by such rules.  
 Alvarez contends, however, that this explanation is false.  He
 argues that the pretextual character of Pepsi's explanation was
 shown by the fact that Cordero was suspended for only 30 days,
 as compared to the 60-day suspension and subsequent discharge
 imposed upon him.  The evidence showed that Pepsi had
 established rules and regulations for the workplace that
 prohibited fighting and horseplay, among other things, and that
 any violation could render the employee subject to dismissal at
 Pepsi's discretion.   
      Alvarez is only partly correct.  A jury could have
 disbelieved Pepsi's claim that its workplace rules required the
 dismissal of an employee who initiated a fight in all cases.  
 The rules themselves speak of Pepsi's discretion with regard to
 the sanctions that it could impose, which hardly supports the
 claim that dismissal was mandatory.  Pepsi sought to explain
 the apparent inconsistency by arguing that, although the rules
 did not specify that dismissal was mandatory, as a matter of
 policy it would always dismiss employees who had initiated
 fights.  However, this argument is undermined by the evidence
 that several years earlier, Alvarez had initiated a fight, and
 although he had been sanctioned, he had not been fired.  There
 was more than enough evidence for the jury to find that it was
 within Pepsi's discretion whether or not to discharge an
 employee when that employee had initiated a fight in the
 workplace.   
      As a result of the inconsistencies in Pepsi's
 argument pointed out above, a reasonable jury could question
 Pepsi's credibility.  There is, however, no direct evidence
 that Alvarez was not discharged because of the fight.  Alvarez
 claims that the fact that he was initially only suspended, and
 only later offered early retirement (and ultimately
 discharged), indicates that the latter two decisions had
 nothing to do with the fight.  This argument tests, and perhaps
 surpasses, the outer limits of the inferences that could
 permissibly be drawn from the facts.  The fact that Pepsi's
 proffered explanation was not entirely consistent does not give
 a jury license to disbelieve all of the uncontradicted evidence
 indicating that Alvarez was discharged as a result of the
 fight.
      But even assuming that a reasonable jury could find
 Pepsi's explanation to be pretextual, Alvarez failed to show
 that Pepsi discriminated against him because of his age.  
 Alvarez makes much of the language from St. Mary's Honor Centerstating that "[t]he factfinder's disbelief of the reasons put
 forward by the defendant (particularly if the disbelief is
 accompanied by a suspicion of mendacity), may, together with
 the elements of the prima facie case, . . . permit the trier of
 fact to infer the ultimate fact of intentional discrimination."  
 509 U.S. at 511 (emphasis added).  However, not only is a jury
 not required to infer discrimination from a showing of pretext
 together with the evidence underlying the prima facie case, but
 the facts will most often not permit a jury to do so.  That is
 certainly the case here, where both the prima facie case and
 the showing of pretext are weak, and there is no independent
 evidence that would reasonably allow the inference that age
 discrimination was the motivation for Pepsi's actions.
      With regard to the evidence underlying the prima
 facie case, there is no doubt that, at 54 years of age, Alvarez
 fell within the category of persons protected by the Act, and
 that he was subjected to adverse employment action, namely,
 suspension and termination.  Pepsi contends that there is scant
 evidence to support a finding that Alvarez was performing his
 job adequately, noting that Alvarez did not delegate properly,
 and that he was rude and offensive to other workers.  However,
 as the district court found, a reasonable jury could find for
 Alvarez on this point, given his 34 years of service with the
 company, as well as the raises, performance bonuses, and
 commendations that he received during that time.   
      The fourth and last prong of the prima facie case,
 however, presents a more difficult question.  Undoubtedly,
 Pepsi treated Cordero, who was under 40 years of age, more
 leniently than it did Alvarez.  The district court found,
 because the burden on Alvarez was exceedingly light, that he
 had proved this element of his prima facie case.  Pepsi
 contends that the district court erred, because no reasonable
 jury could have found that Alvarez and Cordero were similarly
 situated.
      We agree with Pepsi.  We note here that Alvarez had
 the burden of proof on this issue, not merely a burden of
 production.  As the Court explained in St. Mary's Honor Center,
 the defendant "feels the burden" to provide a legitimate,
 nondiscriminatory reason for its actions as soon as the
 plaintiff has presented some evidence to support his prima
 facie case.  See 509 U.S. at 510 n.3.  That does not mean,
 however, that the plaintiff need not prove his prima facie
 case.  To the contrary, if the finder of fact subsequently
 fails to be convinced by the evidence adduced by the plaintiff
 in support of his prima facie case, the burden of production is
 lifted from the defendant.  See id.  
      The evidence presented at trial established that
 Alvarez initiated the fight, and, in any case, that he had been
 most at fault.  Although he denies that he initiated the fight,
 he admits, inconsistently, that he threw a piece of cardboard
 at Cordero at the beginning of their argument, and that he
 later threw either a radio or a flashlight at Cordero's face.  
 Alvarez also admits that he had problems controlling his anger,
 frequently used offensive language, often used physical force
 to maintain order among the workers that he supervised, and had
 been involved in at least two previous fights on the premises,
 albeit a long time before.  In contrast, it was shown that
 Cordero had never been involved in a violent incident at work,
 that he had not initiated this particular fight, and that he
 was otherwise a well-behaved employee.  This evidence
 undermines any argument that Alvarez and Cordero were similarly
 situated for purposes of the sanctions imposed upon them by
 Pepsi.  Cf. Perkins v. Brigham & Women's Hosp., 78 F.3d 747,
 751 (1st Cir. 1996) (disparate treatment claim under Title
 VII).  Consequently, there is no support for the conclusion
 that age was not treated neutrally by Pepsi in deciding to
 impose sanctions of different severity upon Cordero and
 Alvarez.
      Moreover, at this stage of the McDonnell Douglasanalysis it is irrelevant whether or not the facts in question
 sufficed to establish a prima facie case or not.  Instead, the
 question is whether the whole of the evidence mustered by the
 plaintiff, regardless of whether it was initially presented to
 establish the prima facie case or to show pretext, suffices to
 allow a finding that the defendant intentionally discriminated
 against him.  See Snchez v. Puerto Oil Co., 37 F.3d 712, 720
 (1st Cir. 1994).  We find that, even if the evidence described
 above were sufficient to establish the fourth and final
 requirement of the prima facie case, this evidence would still
not be probative of discriminatory intent.  
     Nor is there evidence that could independently
 support a finding that Pepsi discriminated against Alvarez
 because of his age.  Cordero did tell Alvarez that he was
 senile, but, aside from the fact that he said that in the
 context of an altercation with Alvarez, it was shown that
 Cordero had no authority to influence Pepsi's decision to
 discharge Alvarez.
     As for the offer of early retirement, we note that
 such an offer is not, by itself, evidence of constructive
 discharge or discriminatory animus.  See Vega v. Kodak
 Caribbean, Ltd., 3 F.3d 476, 479 (1st Cir. 1993); Hebert v.
 Mohawk Rubber Co., 872 F.2d 1104, 1110-11 (1st Cir. 1989); Grayv. New England Tele. and Tele. Co., 792 F.2d 251, 255 (1st Cir.
 1986).  Something more must be shown that would tie the
 decision to offer early retirement to discrimination.   
     The evidence here, however, suggests only that Pepsi
 had decided to terminate Alvarez, but because of his many years
 of service, sought to find a way to soften the economic impact
 of that decision.  As we indicated above in the background
 section, Pepsi began paying Alvarez's salary after his
 suspension ended, even though he was not working at the time,
 and offered to continue doing so until the end of the calendar
 year, even after he had retired and begun to receive his
 pension payments.  Pepsi also suggested that Alvarez wait until
 May 15, 1994, the date of his 55th birthday, so that he could
 qualify for his full pension.  The uncontroverted evidence
 indicated that, had Pepsi fired Alvarez before May 15, 1994, he
 would not have been eligible for a full pension until he
 reached his 62nd birthday, seven years later.  In view of this
 evidence, we find that no reasonable jury could find that
 Pepsi's offer of early retirement is evidence of discriminatory
 animus.  We therefore conclude that the district court did not
 err in dismissing with prejudice Alvarez's ADEA claim.  
 IV.  Puerto Rico Law 100
     Puerto Rico Law 100, like the ADEA, "provides a
 cause[] of action in favor of those persons who suffer
 discrimination in their employment because of their age.  
 However, [the statutes] differ with regard to the burden[s] of
 proof that they impose upon the employer and the employee,"
 under certain circumstances.  Soto v. Caribe Hilton Hotel, No.
 RE-93-603, ___ P.R. Dec. ___, 1994 WL 909663, at 4 (October 17,
1994).   In particular, Law 100 establishes a rebuttable
 presumption that the employer has discriminated illegally
 unless the employer can show that the discharge was justified.  
See P.R. Laws Ann. tit. 29,  148.  
     The most important difference between Law 100 and the
 ADEA is that when the Law 100 presumption has been triggered,
 it shifts not only the burden of production, but also the
 burden of persuasion, from the employee to the employer.  SeeIbaez-Bentez v. Molinos de Puerto Rico, Inc., 114 P.R. Dec.
42, 52 (1983).   Thus, in order to rebut the Law 100
 presumption, the employer must prove, by a preponderance of the
 evidence, that the challenged action was not motivated by
 discriminatory age animus.  See id. at 53.
     As noted above, see supra note 5, the Law 100
 presumption of discrimination is triggered when it is shown
 that the employer lacked "just cause" to discharge or take
 other adverse action with regard to the employee.  In Bez-
 Garca v. Cooper Labs, Inc., 120 P.R. Dec. 145, 155 (1987), the
 Supreme Court of the Commonwealth of Puerto Rico determined
 that, because Law 100 did not define the term "just cause," the
 term's definition would be sought in an analogous statute - the
 Puerto Rico Law on Unjustified Dismissals, Law 80 of May 30,
 1976, P.R. Laws Ann. tit. 29,  185a-185k.  Law 80 defines a
 dismissal without just cause as a dismissal based on a reason
not allowed by the statute.   The statute allows dismissals for
 a number of reasons, including an employee's improper or
 disorderly conduct, negligent attitude towards his work, and
 violations of the employer's rules and regulations.  See P.R.
 Laws Ann. tit. 29,  185b.  However, "[a] discharge made by
 mere whim or fancy of the employer or without cause related to
 the proper and normal operation of the establishment shall not
 be considered as a discharge for [just] cause."  Id. (Official
 translation 1985).  Once the plaintiff has proven that he was
 directly or constructively discharged, Law 80 shifts the burden
 of proof to the employer to show that the discharge was
 justified.  See P.R. Laws Ann. tit. 29,  185k; see also Bez-
Garca, 120 P.R. Dec. at 152.  
     It follows that the Law 100 presumption that a
 dismissal was discriminatory depends on the Law 80 presumption
 that the dismissal was unjustified.  Stated more explicitly,
 the Law 80 presumption is triggered when the plaintiff alleges
 unjustified dismissal and proves by a preponderance of the
 evidence that he was actually or constructively discharged.  
 The burden then shifts to the employer to prove by a
 preponderance of the evidence that it had just cause to dismiss
 the employee.  If the employer fails to make this showing, the
 Law 100 presumption of discrimination is triggered, shifting
 the burden to the employer of proving by a preponderance of the
 evidence that the otherwise-unjustified dismissal was not
 motivated by discriminatory animus.
     Conversely, if the employer proves that the discharge
 was justified, then the Law 100 presumption disappears.  SeeP.R. Laws Ann. tit. 29,  148.  Consequently, the burden of
 proof on the ultimate issue of discrimination remains with the
 plaintiff, as in any other civil case.  The plaintiff must
 prove that, even if the dismissal was justified, the defendant
 nevertheless violated Law 100 because the dismissal was
 motivated by discriminatory animus instead of or in addition to
 the legitimate reasons for dismissal.  The Law 100 plaintiff is
 then in same situation as an ADEA plaintiff after the defendant
 has articulated a legitimate, non-discriminatory reason for its
 actions.
     This is such a case, because the evidence presented
 at trial would not permit a reasonable jury to find that Pepsi
 had failed to meet its burden under Law 80 of proving that
 Alvarez's discharge was justified.  The evidence is clear.  
 Pepsi had established rules and regulations for the workplace
 that prohibited fighting and horseplay, and specifically warned
 employees that any violation of such rule could render the
 employee subject to dismissal at Pepsi's discretion.  Alvarez
 admitted that he was aware of that rule, including the fact
 that dismissal was a possible sanction for a violation of the
 rule.  It is not disputed that Alvarez was involved in the
 fight, and, although he denies it, there is overwhelming
 evidence that he instigated the fight with Cordero, and not the
 other way around.  It is also undisputed that Alvarez had been
 previously involved in other fights, and had been warned in
 writing that any further violations would entail his dismissal.  
 Alvarez also admitted that he used offensive language and
 physical force on numerous occasions in the workplace.   
     Given this evidence, no reasonable jury could have
 failed to find that Pepsi had just cause to dismiss Alvarez,
 regardless of the allocation of the burden of persuasion.  
 Furthermore, as we have discussed above with regard to his ADEA
 claim, no reasonable jury could have found that Alvarez carried
 his burden of proof on the ultimate issue of discrimination.  
 We therefore conclude that the district court did not err in
dismissing with prejudice Alvarez's Law 100 claim.  
 V.  Conclusion
     For the reasons discussed above, we affirm the
 judgment of the district court.
 

</body>

</html>