**Keenan v. AIG Life Ins. Co.**          CV-03-31-B     07/11/03

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**


<u>**Patricia Keenan, Individually
and as Administratrix of the Estate of
Robert Keenan, and on behalf of
others similarly situated**</u>,

    **v.**                                        Civil No. 03-31-B
                                              Opinion No. 2003 DNH 126
<u>**AIG Life Insurance Company**</u>


<u>**MEMORANDUM AND ORDER**</u>


Patricia Keenan brings this diversity and proposed class action suit on behalf of herself and her late husband, Robert Keenan, against AIG Life Insurance Company ("AIG").[1]  Keenan alleges AIG committed various torts when it issued Wal-Mart Stores, Inc. ("Wal-Mart") a corporate owned life insurance ("COLI") policy insuring Robert Keenan's life and designating Wal-Mart as beneficiary.  Specifically, Keenan seeks damages for commercial appropriation (Count III), intrusion upon seclusion (Count IV), civil conspiracy (Count V), unjust enrichment (Count

---

[1]  Pursuant to my oral order at a hearing on April 4, 2003, I consolidated <u>Keenan v. AIG</u> and its counterpart <u>Rice v. Wal-Mart Stores Inc., et al.</u>, civil no. 02-390-B, for pre-trial purposes. Only AIG, however, filed this motion for summary judgment.

VII), and intentional infliction of emotional distress (Count IX). (Doc. No. 1) (Compl. ¶ 23-52).[2] In addition, Keenan seeks declaratory relief pursuant to N.H. Rev. Stat. Ann. ("RSA") § 491:22 (1997 & Supp. 2001).

AIG moves for summary judgment arguing that Keenan's claims are time-barred by the applicable three-year statute of limitations, RSA § 508:4 (1997 & Supp. 2002). While conceding the applicability of the three-year statute of limitations, Keenan objects to AIG's motion arguing that her claims are saved by the New Hampshire discovery rule. (Doc. No. 5).

## BACKGROUND[3]

Patricia Keenan ("Patricia" or "Keenan"), a resident of Dover, New Hampshire, is the widow of Robert Keenan ("Robert"), a former Wal-Mart employee. (Compl. ¶ 4). Robert died in 1995.

---

[2] Counts II, VI, and VII are entirely missing from Keenan's complaint. Counts II, VI, and VII are present in the second amended complaint in Rice. I note this only by way of explanation for their absence.

[3] The background facts are set forth in the light most favorable to Keenan, the non-movant. See Navarro v. Pfizer Corp., 261 F.3d 90, 94 (1st Cir. 2001)(describing the summary judgment standard).

Prior to his death, he worked as a maintenance worker in Wal-Mart's Somersworth, New Hampshire store. (Compl. ¶ 11). He earned an hourly salary at close to minimum wage and Wal-Mart provided health insurance benefits to the Keenan family. Aff. of Patricia Keenan, Ex. 1 to Pl.'s Obj. to Def.'s Mot. for Summ. J. In addition, Wal-Mart deducted money from each of Robert's paychecks to pay premiums for a life insurance policy that named Patricia as beneficiary. Id. Upon Robert's death in 1995, Patricia received $10,000 in life insurance benefits which she believes came from a policy purchased with deductions from Robert's paychecks. Id.

In December 1993, Wal-Mart decided to purchase COLI policies from AIG and to use funds generated through associated tax benefits to provide additional death benefits for its employees.[4] Id. COLI plans are commonly used by corporations to insure the lives of certain key officers and directors. (Compl. ¶ 6). In the early 1990's, Wal-Mart, like other corporations, used COLI

---

[4] Under the Special Death Benefit Wal-Mart agreed "to pay $5,000 to the family of anyone who dies while employed by Wal-Mart, $10,000 for an accidental death. Families of former employees get $1,000." Ex. B to Def.'s Mot for Summ. J.

policies to insure a "broader class" of corporate employee. This "broader class" included over 350,000 hourly and salaried employees in all 50 states. See Aff. of Tom Emerick, Ex. A to Def.'s Mot. for Summ. J.; Ex. 1 to Pl.'s Obj. to Def.'s Mot to Dismiss. Wal-Mart paid a substantial premium to AIG to cover the first year of death benefits. AIG then loaned back to Wal-Mart approximately 90 percent of the premium affixing an interest rate to this loan. Next, Wal-Mart deducted its interest payments on the loans from its total income. Id. This arrangement both allowed Wal-Mart to take advantage of a loophole, since rectified, in tax law and yielded "substantial profits" for life insurers like AIG. Id.

On December 14, 1993, prior to formalizing its COLI policies with AIG, Tom Emerick, Vice-President of Wal-Mart's Benefits Department, drafted a memorandum to all Wal-Mart store managers. Emerick attached a notice which was distributed to all Wal-Mart employees later that same month. Aff. of Emerick, Ex. A to Def.'s Mot. for Summ. J. This notice describes the new special death benefit and states that it would be funded through life insurance policies owned by Wal-Mart in which Wal-Mart was the beneficiary. Id. Specifically, the notice states:

> Wal-Mart is providing these new death benefits as a result of financial gains from life insurance policies Wal-Mart will purchase which will cover the lives of associates who participate in the group health plan. Th[e] Wal-Mart owned life insurance will result in financial benefits for the corporation. Any net life insurance proceeds payable to Wal-Mart from this life insurance as a result of the death of an active associate will be contributed to the profit sharing plan.

Id. The notice also clearly indicates that each employee had the option to not participate and lists the contact information for the Benefits Department. Id.

Keenan alleges that Wal-Mart used private, confidential information from Robert's personnel file to obtain a COLI policy on his life. She further alleges that upon Robert's death in 1995, Wal-Mart received benefits from the COLI policy insuring Robert's life. Patricia states that neither she nor Robert knew about, or consented to, the purchase of a COLI policy covering Robert's life.

Wal-Mart's COLI policies became effective in 1994 and saved Wal-Mart over $36 million dollars in tax payments that year. News of the COLI policies on non-key employees spread throughout the media. In its October 23, 1995 issue, Newsweek published an article entitled "Deal of Lifetime: How America's biggest corporations are cashing in on your mortality." Ex. B to Def.'s

Mot. for Summ. J.  The article begins, in capital letters, "Wal-Mart Stores" and continues by describing the COLI scheme, and Wal-Mart's use of it, in somewhat harsh detail.  Emerick, who gave an interview for the article, is quoted in the article.  A month earlier, on September 24, 1995, The New York Times printed "Earning it; A Tax Threat to Company Insurance."  Ex. C to Def.'s Mot. for Summ. J.  This article states that Wal-Mart had COLI policies and described how a typical plan may work.  Id.  It also notes that Wal-Mart "informs its workers of the policies," but that other companies that held COLI policies did not.  Id.  Wal-Mart surrendered and terminated its COLI policies in January 2000.

## STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party seeking summary judgment must first demonstrate

the absence of a genuine issue of material fact in the record. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In this context, "a fact is 'material' if it potentially affects the outcome of the suit and a dispute over it is 'genuine' if the parties' positions on the issue are supported by conflicting evidence." Intern'l Ass'n of Machinists and Aerospace Workers, AFL-CIO v. Winship Green Nursing Ctr., 103 F.3d 196, 199-200 (1st Cir. 1996)(citations omitted).

Once the moving party carries its burden, the burden shifts to the nonmoving party to "produce evidence on which a reasonable finder of fact, under the appropriate proof burden, could base a verdict for it; if that party cannot produce such evidence, the motion must be granted." Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 94 (1st Cir. 1996) (citing Celotex, 477 U.S. at 323; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)). If the non-moving party provides "evidence that is merely colorable, or is not significantly probative," summary judgment should be granted. Wynne v. Tufts Univ. Sch. of Med., 976 F.2d 791, 794 (1st Cir. 1992) (quoting Anderson, 477 U.S. at 249-50) (internal quotation marks omitted).

## ANALYSIS

AIG contends that Keenan's claims are time-barred by the three year statute of limitations set forth in RSA § 508:4.[5] As an affirmative defense, AIG has the burden of proving that a statute of limitations applies and acts to bar Keenan's claims. See Glines v. Bruk, 140 N.H. 180, 181 (1995) (citing Exeter Hosp. v. Hall, 137 N.H. 397, 399 (1993)); see also Pichowicz v. Watson Ins. Agency, Inc., 146 N.H. 166, 167 (2001). Once AIG demonstrates that the action was not "brought. . . within [three] years of the act or omission complained of," it meets its burden. At this stage, Keenan has "the burden of raising and proving that the discovery rule is applicable to an action otherwise barred by the statute of limitations." Id. While AIG has met its burden, Keenan has failed to meet her respective burden for the reasons that follow.

AIG contends, and I agree, that Keenan's claims arose in December 1993 when Wal-Mart paid AIG a substantial premium in exchange for the COLI policy it purchased on Robert's life. See

---

[5] Keenan rightfully concedes that RSA § 508:4 states the statute of limitations applicable to all of her claims against AIG.

<u>Pichowicz</u>, 146 N.H. at 167 ("a cause of action arises once all the necessary elements are present") (internal citation omitted). This is so because in December 1993, all the necessary elements of Keenan's claim were in place. For example, as to Keenan's intrusion upon seclusion claim, AIG allegedly obtained Robert's personal and confidential information about him in December 1993 when Wal-Mart obtained the COLI policy. Earlier that same month, Wal-Mart supplied all of its employees with notification of its intention to obtain COLI policies on the lives of its employees.

Keenan argues that neither she nor Robert discovered, or could they have reasonably discovered, that AIG supplied Wal-Mart with the COLI policy in 1993. In an affidavit attached to her objection, Keenan avers that she only heard of the COLI policy "a few months ago" when she was contacted by the attorney who now represents her. Aff. of Keenan, Ex. 1 to Pl.'s Obj. to Def.'s Mot. for Summ. J. She further avers that Robert could not have known of the policy because "he would have told me about this policy if he knew about it." <u>Id.</u> Keenan also attaches to her objection the affidavits of a present Wal-Mart employee, two former Wal-Mart employees and a widow of a former Wal-Mart employee. <u>See</u> Ex. 2-5 to Pl.'s Obj. to Def.'s Mot. for Summ. J.

All four affiants claim that they did not know that Wal-Mart was purchasing COLI policies on its employees in 1993. See id. Notably, however, they cannot directly challenge Emerick's claim that all Wal-Mart employees received the memorandum informing them of the COLI policies in December 1993. Thus, even when I construe this evidence in the light most favorable to Keenan, she has not undermined Wal-Mart's evidence demonstrating that all of its employees received the December 1993 memorandum notifying them about Wal-Mart's intention to purchase the COLI policies. Because Keenan does not argue that the 1993 notice was confusing or ambiguous, I find that Keenan and her late husband should have reasonably discovered their alleged injuries in December 1993, when Wal-Mart notified Robert of its intention to purchase a COLI policy on his life. Her claims, therefore, are time-barred pursuant to RSA § 508:4.[6]

---

[6] AIG also argues that the 1995 New York Times and Newsweek articles demonstrate that Keenan should reasonably have known of Wal-Mart's COLI policies. I decline to analyze this argument because I find Wal-Mart's 1993 notice of their new special death benefits and COLI policies sufficient to trump Keenan's discovery rule argument. The New York Times article does, however, provide further evidence that Wal-Mart notified its employees of the COLI policies unlike other corporations.

## CONCLUSION

For the forgoing reasons, I grant AIG's Motion for Summary Judgment. (Doc. No. 5). I deny its Motion to Dismiss as moot. (Doc. No. 4). Accordingly, the clerk of the court shall enter judgment and close the case.

SO ORDERED.

_____
Paul Barbadoro
Chief Judge

July 11, 2003

cc:   Paul W. Hodes, Esq.
      Paul A. Fischer, Esq.
      David P. Slawsky, Esq.

-11-