Rice v. Wal-Mart Stores, et al.          CV-02-390-B     07/23/04

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

<u>Vicki Rice, et al.</u>

    **v.**                                      Civil No. 02-390-B
                                  Opinion No. 2004 DNH 108
<u>Wal-Mart Stores, Inc., et al.</u>


**<u>MEMORANDUM AND ORDER</u>**

Vicki Rice and Patricia Keenan, the widows of former employees of Wal-Mart Stores, Inc., have brought this class action challenging a program in which Wal-Mart purchased corporate-owned life insurance ("COLI") policies on the lives of more than a thousand of its rank-and-file employees in New Hampshire.  In my order of September 30, 2003, <u>Rice v. Wal-Mart Stores, Inc.</u>, 2003 DNH 166, 2003 WL 22240349, I dismissed all claims against Hartford Life, one of the insurance companies that issued the COLI policies, except for plaintiffs' claims for civil conspiracy and unjust enrichment.  Hartford Life now moves for summary judgment on those claims based on a statute of limitations defense.[1]  I agree with Hartford Life that Rice's

---

[1] On July 11, 2003, I found that the statute of limitations barred Patricia Keenan's claims against AIG Life Insurance Company for its role in selling a policy on her husband's life to Wal-Mart in the companion case to this one.  <u>Keenan v. AIG Life</u>

claims are barred by the applicable statute of limitations.  <u>See</u>

N.H. Rev. Stat. Ann. § 508:4.


## I.  <u>BACKGROUND</u>[2]

Michael Rice worked as an employee for Wal-Mart during the

ten years preceding his death in 1999.  In December 1993, he

worked at the Palmyra, Maine Wal-Mart store, and in 1998 and

1999, he worked as a manager in the Hooksett, Tilton, and

Concord, New Hampshire stores.

On December 14, 1993, Wal-Mart informed its employees that

it planned to purchase life insurance polices on their lives,

naming itself as the beneficiary.  (Aff. of Emerick, Ex. A to

Def.'s Mot. for Summ. J.)  Tom Emerick, Vice-President of

Wal-Mart's Benefits Department, distributed a memorandum to all

store managers with instructions to give a notice (provided to

them for that purpose) to each employee.  The notice stated:

---

<u>Ins. Co</u>, 2003 DNH 126, 2003 WL 21696185.  Because the facts and analysis are substantially identical, I discuss them more briefly here.

[2]  As is required by Fed. R. Civ. P. 12(b)(6), the following facts are described in a light most favorable to the nonmoving parties, in this case, the plaintiffs.  <u>See</u> <u>Martin v. Applied Cellular Tech., Inc.</u>, 284 F.3d 1, 6 (1st Cir. 2002).

> Wal-Mart is providing these new death benefits as a
> result of financial gains from life insurance policies
> Wal-Mart will purchase which will cover the lives of
> associates who participate in the group health plan.
> Th[e] Wal-Mart owned life insurance will result in
> financial benefits for the corporation.  Any net life
> insurance proceeds payable to Wal-Mart from this life
> insurance as a result of the death of an active
> associate will be contributed to the profit sharing
> plan.

(Def.'s Mot. for Summ. J.)  The notice also clearly indicated that each employee had the option to not participate and listed the contact information for the Benefits Department.  (Id.)

That same month, Wal-Mart purchased a policy on the life of Michael Rice.  Vicki Rice alleges that Wal-Mart used private, confidential information from Michael's personnel file to obtain a COLI policy on his life.  She states that she and Michael neither knew about, nor consented to, the purchase of such a policy.  In support of this assertion, she has provided affidavits from numerous Wal-Mart employees, including Nick Ballstrom, manager of the Palmyra store during December 1993, stating that none of them remember ever receiving such a notice or otherwise being informed of Wal-Mart's COLI policies on associates until this law suit was filed.

Wal-Mart's COLI policies became effective in 1994 and saved Wal-Mart over $36 million dollars in tax payments that year.

News of the COLI policies on non-key employees spread throughout the media. In its October 23, 1995 issue, Newsweek published an article entitled "Deal of Lifetime: How America's biggest corporations are cashing in on your mortality." (Ex. B to Def.'s Mot. for Summ. J.) The article begins, in capital letters, "Wal-Mart Stores" and continues by describing the COLI scheme, and Wal-Mart's use of it, in somewhat harsh detail. Emerick was quoted in the article. A month earlier, on September 24, 1995, the New York Times printed an article entitled "Earning it; A Tax Threat to Company Insurance" stating that Wal-Mart had COLI policies and described how a typical plan may work. (Ex. B to Def.'s Mot. for Summ. J.) It also noted that Wal-Mart "informs its workers of the policies," but that other companies that held COLI policies did not. Id.

When Michael Rice died in 1999, Hartford Life paid Wal-Mart the benefits from the policy on Rice's life. Wal-Mart surrendered and terminated its remaining COLI policies in January 2000.

## II. STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment must first demonstrate the absence of a genuine issue of material fact in the record. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In this context, "a fact is 'material' if it potentially affects the outcome of the suit and a dispute over it is 'genuine' if the parties' positions on the issue are supported by conflicting evidence." Int'l Ass'n of Machinists & Aerospace Workers v. Winship Green Nursing Ctr., 103 F.3d 196, 199-200 (1st Cir. 1996) (citations omitted). Once the moving party carries its burden, the burden shifts to the nonmoving party to "produce evidence on which a reasonable finder of fact, under the appropriate proof burden, could base a verdict for it; if that party cannot produce such evidence, the motion must be granted." Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 94 (1st Cir. 1996) (citing Celotex, 477 U.S. at 323; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)). If the non-moving party provides "evidence that is merely colorable or is not significantly

probative," summary judgment should be granted. Wynne v. Tufts Univ. Sch. of Med., 976 F.2d 791, 794 (1st Cir. 1992) (quoting Anderson, 477 U.S. at 249-50) (internal quotation marks omitted).

### III.  ANALYSIS

Hartford Life contends that Rice's claims are time-barred by the three-year statute of limitations set forth in N.H. Rev. Stat. Ann. § 508:4.  Rice rightfully concedes that § 508:4 states the statute of limitations applicable to all of her claims against Hartford Life.  As an affirmative defense, Hartford Life has the burden of proving that a statute of limitations applies and acts to bar Rice's claims.  See Glines v. Bruk, 140 N.H. 180, 181 (1995) (citing Exeter Hosp. v. Hall, 137 N.H. 397, 399 (1993)); see also Pichowicz v. Watson Ins. Agency, Inc., 146 N.H. 166, 167 (2001).  Once Hartford demonstrates that the action was not "brought . . . within [three] years of the act or omission complained of," it meets its burden.  Glines, 140 N.H. at 181. Rice then must show that discovery rule applies to toll the statute of limitations.  Id.  While Hartford has met its burden, Rice has failed to produce sufficient evidence to support her reliance on the discovery rule.

Hartford Life contends, and I agree, that the claims at issue arose in December 1993 when Wal-Mart paid Hartford Life a substantial premium in exchange for the COLI policy it purchased on Michael's life. See Pichowicz, 146 N.H. at 167 ("[a] cause of action arises once all the necessary elements are present") (internal citation omitted). This is so because in December 1993, all the necessary elements of the claims were in place. Hartford allegedly obtained Michael's personal and confidential information in December 1993, when Wal-Mart obtained the COLI policy. Earlier that same month, Wal-Mart supplied all of its employees with notification of its intention to obtain COLI policies on the lives of its employees.

Rice argues, as Keenan did in the companion case, that neither she nor Michael discovered, nor could they have reasonably discovered, that Hartford Life supplied Wal-Mart with the COLI policy in 1993. Rice submits substantially similar affidavits to those provided by Keenan. Her affidavit states that she only heard of the COLI policy when she became involved in a worker's compensation case after Michael's death. The other affiants state that they first heard of it when contacted by the attorney in this case. (Aff. of Rice, Ex. 1; Aff. of

Ballsmith, Ex. 2; Affs. of Lehman, Joyce Moody, Rubin Moody, and Fortune, Ex. 3 to Pl.'s Obj. to Def.'s Mot. for Summ. J.) As I noted in Keenan's case, none of the affiants directly challenge Emerick's claim that all Wal-Mart employees received the memorandum informing them of the COLI policies in December 1993. Even Nick Ballsmith, who did not provide an affidavit in Keenan's case, merely states that he does not remember having ever received or passed on any information relating to COLI policies on rank-and-file employees.

Even when I construe this evidence in the light most favorable to Rice, she has not undermined Wal-Mart's evidence demonstrating that all of its employees received the December 1993 memorandum notifying them about Wal-Mart's intention to purchase the COLI policies. The notice clearly provided information that Wal-Mart was going to purchase life insurance policies on its employees' lives, and that it - not the employees' survivors - would receive the financial gains. The fact that the notice did not disclose the magnitude of the financial gain to Wal-Mart is not relevant. Rice has failed to produce sufficient responsive evidence to permit a reasonable jury to conclude that the discovery ruled tolled the running of

the statute of limitations.[3]  Her claims, therefore, are time-barred pursuant to N.H. Rev. Stat. Ann. § 508:4.

### III.  <u>CONCLUSION</u>

For the reasons discussed above, I grant Hartford Life's motion for summary judgment  (Doc. No. 46).  Hartford Life is therefore dismissed as a defendant in this case.

SO ORDERED.


<u>/s/Paul Barbadoro</u>
Paul Barbadoro
Chief Judge


July 23, 2004

cc:  David P. Slawsky, Esq.
     William Pandolph, Esq.
     W. Michael Dunn, Esq.
     Barry Chasnoff, Esq.

---

[3]  To the extent that Rice argues I should be persuaded by the result reached in similar litigation in Texas, I note that <u>Mayo v. Hartford Life Ins. Co.</u>, 220 F. Supp. 2d 714 (S.D. Tex. 2002) applied Texas law, whereas I apply New Hampshire law.